[Nos. 3079, 3102, Dec. 27, 1926. Rehearing Denied Feb. 19, 1927]

## STATE ex rel. ULRICK v. SANCHEZ

## STATE ex rel. CHAVEZ v. CLARK

### [255 Pac. 1077]

#### SYLLABUS BY THE COURT

1. Under Const. art. 5, § 5, the Governor has power to remove any officer appointed by him, including those appointed by and with the consent of the Senate. (Parker, C. J., dissenting.)

2. Under Const. art. 5, § 5, the Governor is not required to make charges, to give notice, or to accord a hearing, before exercising the removal power.

Appeal from District Court, Santa Fe County; Holloman, Judge.

[1] 29 Cyc p. 1408 n. 18.  [2] 29 Cyc p. 1408 n. 20.

Two proceedings in quo warranto by the State, on the relation of George L. Ulrick, and on the relation of Martin Chavez, directed to Felipe Sanchez y Baca and to John S. Clark, respectively. From a judgment for defendants on demurrers to the complaints, the relators appeal. Cases considered together on appeal. Affirmed.

C. J. Roberts, of Santa Fe, for appellant Ulrick.

E. R. Wright, of Santa Fe, for appellant Chavez.

J. O. Seth, of Santa Fe, for appellees.

OPINION OF THE COURT

BICKLEY, J. The State of New Mexico by its Attorney General, on the relation of George L. Ulrick, filed a complaint in quo warranto in the District Court of Santa Fe County against Felipe Sanchez y Baca to oust him from the office of associate commissioner of the state tax commission of the state of New Mexico. The defendant appeared and filed a demurrer to the complaint, for the reason that the complaint failed to state facts sufficient to constitute a cause of action, which was sustained by the trial court, and, the plaintiff and relator electing to stand upon the complaint, judgment was entered dismissing the complaint on the merits. The plaintiff appealed, and seeks a review of the action of the court in sustaining the demurrer and entering judgment for the defendant. In the brief of appellant Martin Chavez in case No. 3102 it is stated that that action was brought on the relation of Martin Chavez against John S. Clark to oust him from the office of associate commissioner of the state tax commission of the state of New Mexico. The cause was disposed of by the district court upon like pleadings and proceedings and in the same manner as was case No. 3079. Both cases so far as it is necessary to consider, involved the same points. By agreement of counsel, the two cases are to be argued and considered together upon the briefs filed in the two cases. It is also agreed that

JANUARY TERM, 1927     267

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

the facts involved in the two cases are substantially identical.

The cause of action was primarily based upon the following alleged facts, to-wit: That relators were duly appointed, qualified and acting associate commissioners of the state tax commission, having been appointed by the Governor of the state of New Mexico on the 21st day of January, 1921, and 12th day of March, 1923, respectively, by and with the advice and consent of the Senate of New Mexico, to serve for a period of six years thereafter; that, while thus acting, the Governor, by executive order, attempted to remove them from office for alleged incompetency, and on or about the same date appointed the said Felipe Sanchez y Baca and John S. Clark to said office; that said purported order of removal and said purported appointments were without authority of law, and were void, because no specific charges constituting the alleged incompetency were filed, and no notice was served upon the relators as to the time and place of hearing; that the relators had not been appointed by the Governor alone, but by the Governor, by and with the advice and consent of the Senate. It is alleged that the relators were notified in writing on or before a date mentioned, to show cause at that time why they should not be removed for incompetency; that thereafter, without any hearing of any kind, the governor entered an order removing said relators and issued to the defendants commissions to the office and caused the adjutant general of the state of New Mexico to forcibly remove relators from the office room occupied by them in the state capitol building, and deliver possession of said office to defendants; that subsequently the Governor caused to be served upon relators an executive communication, fixing a date for relators to appear before the Governor to show cause, "if any you have, why you should not have been, and should not be, removed for incompetency." The language last above quoted was followed by certain specifications of the grounds of incompetency. It is alleged that thereafter a certain purported hearing was had be-

268     SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

fore the Governor, at which time relators appeared in person and by counsel. After protesting and excepting to the proceedings up to that point, and objecting to proceedings further on the ground of lack of power in the Governor to remove relators, and challenging the sufficiency of the specifications of the charges, and challenging the regularity of the proceedings generally, the relators filed their respective answers, whereupon further hearing was had embracing oral testimony on behalf of relator Ulrick, an ex parte affidavit, declarations by the Governor concerning his information and conclusions, based upon ex parte conversations, his personal observations, and his offer to examine the relators under oath, and his proposal to further examine the records of the office of the state tax commission. These proceedings were duly objected to upon the grounds theretofore stated, and upon the further grounds that the ex parte statements were inadmissible, because relators had no opportunity to cross-examine; that the Governor could not legally base his information for removal upon statements made to him, in the absence of relators, and without an opportunity to cross-examine; that it was improper for the governor to consider the records of the office of the state tax commission without informing the relators of the portions of the records which he considered supporting the charge of incompetency; that the Governor could not legally rely upon his personal knowledge of alleged elements of incompetency without making specifications of the facts within his knowledge so relied upon, and other objections challenging the legality of the proceedings.

The executive orders stated that the removal of each of the relators was on the ground of their incompetency.

The cause is here upon two propositions, to wit: First, that the Governor does not have the power of removal of officers appointed by him by and with the advice and consent of the Senate. Second, that a public officer who has under the law a fixed term of office,

and who is removable only for specified causes, cannot be removed without notice and hearing upon charges specifying the particulars constituting the causes for removal, and that the charges must be established by evidence, and that it is the province of the court to ascertain whether the charges stated a ground of removal with sufficient precision and definiteness to inform the officer with what he was to meet, whether notice was given him, whether there was a hearing, and whether there was any substantial evidence in support of the charges.

[1] As to the first proposition it is urged by appellants that they are not subject to removal by the Governor because they are state officers appointed by the Governor, by and with the consent of the Senate, and can only be removed by impeachment proceedings. It is not contended by appellants that they may be removed by the Governor only by and with the consent of the Senate, or upon the address of the Senate, but that the Governor has no power whatever in the matter; the power of impeachment vesting solely in the Legislature. The provisions with reference to impeachment are found in sections 35 and 36 of article 4 of the Constitution, and are as follows:

"Sec. 35. The sole power of impeachment shall be vested in the House of Representatives, and a concurrence of a majority of all the members elected shall be necessary to the proper exercise thereof. All impeachments shall be tried by the Senate. When sitting for that purpose the Senators shall be under oath or affirmation to do justice according to the law and the evidence. When the Governor or Lieutenant Governer is on trial, the Chief Justice of the Supreme Court shall preside. No person shall be convicted without the concurrence of two-thirds of the Senators elected.

"Sec. 36. All state officers and judges of the district court shall be liable to impeachment for crimes, misdemeanors and malfeasance in office, but judgment in such cases shall not extend further than removal from office and disqualification to hold any office of honor, trust or profit, or to vote under the laws of this state; but such officer or judge, whether convicted or acquitted shall, nevertheless, be liable to prosecution, trial, judgment, punishment or civil action, according to law. No officer shall exercise any powers or duties of his office after

notice of his impeachment is served upon him until he is acquitted."

We first, therefore, consider who are "state officers," as that term is used in the provisions concerning impeachment.

"The term 'state officers' is sometimes construed as only the heads of the executive departments of the state elected by the people at large, such as Governor, Lieutenant Governor, State Treasurer, Attorney General, and the like, and it should be so construed when used without circumstances indicating any other intent. In its more comprehensive sense it includes every person whose duty appertains to the state at large. The exact sense in which the term is used in any particular law must often be determined by ordinary rules for judicial construction. State ex rel. Milwaukee Medical College v. Chittenden, 127 Wis. 468, 107 N. W. 500, [508]." 4 Words and Phrases, Second Series, page 675.

It will be noted that state officers may only be impeached "for crimes, misdemeanors, and malfeasance in office," whereas officers appointed by the Governor may be removed for "incompetency, neglect of duty, or malfeasance in office," thus bringing in causes for removal not cognizable by the court of impeachment. A similar uestion was before the Wyoming Supreme Court in State ex rel. Hamilton v. Grant, 14 Wyo. 41, 81 P. 795, 82 P. 2, 1 L. R. A. (N. S.) 588, 116 Am. St, Rep. 982. The court said:

"It will be observed that the causes for impeachment are, 'For high crimes and misdemeanors, or malfeasance in office,' including only criminal conduct or positive wrongdoing, while officers not liable to impeachment may be removed for 'misconduct or malfeasance in office,' thus very greatly extending the causes for removal authorized to be provided for by law. We are very clearly of the opinion that it was not the intention of the framers of our Constitution to require that the jurisdiction of the high court of impeachment should be invoked to try and remove minor subordinate oficers, especially as the term of office of many of such officers would expire by limitation during the session of the Legislature at which they could be impeached, and, again, that court would have no jurisdiction in cases of 'misconduct' not amounting to a high crime or misdemeanor, or malfeasance in office. We are strongly inclined to the . opinion, without deciding the point, that the officers liable to impeachment are the Governor and other state officers mentioned in section 11, article 4, of the Constitution, which does not include the office in question. Certainly, and it has generally been so con-

sidered, that only the superior executive and judicial officers of a state are subject to impeachment, and we have found no case where an officer holding by appointment, or an inferior officer of any kind, has been held subject to impeachment. On the other hand, it has been held that such officers are not so subject."

This statement of the law was cited with approval in People v. Shawver, 30 Wyo. 366, 222 P. 11, decided in 1924, citing other cases, and the court said:

"The justices of the Supreme Judicial Court of Massachusetts, in an opinion to the House of Representatives on this subject, said that it was necessary to determine whether county commissioners came within the description of 'officers of the commonwealth'; that there were several classes of civil officers within the commonwealth, for example, town or city officers, county officers, district officers, and state officers; and that in a certain sense, all might be deemed to be officers of the commonwealth, and that the view that all are subject to impeachment might accordingly be possible. But that the impeachment provision was not intended to include all civil officers of every grade; and they held that officers liable to impeachment were those 'elected by the people at large, or provided for in the Constitution for the administration of matters of general or state concern,' concluding by stating.

" 'Considering the nature and character of the proceedings by impeachment, it does not seem wise to extend their scope by a doubtful construction.' Op. of Justices, 167 Mass. 599, 46 N. E. 118."

Having in mind the opinion of the justices of the Supreme Court of Massachusetts that officers liable to impeachment were those "elected by the people at large," it is worthy of note that section 5 of article 5 of the Constitution provides:

"Should a vacancy occur in any **state office**, except Lieutenant Governor and member of the Legislature, the Governor shall fill such ofice by appointment, and such appointee shall hold office **until the next general election,** when his successor shall be chosen for the unexpired term."

It is true that in Ward v. Romero, 17 N. M. 88. 125 P. 617, a district attorney was held to be a state officer within the meaning of section 9 of article 20 of the Constitution, which provides that:

"No officer of the state who receives a salary shall accept or receive to his own use any compensation, ⁎ ⁎ ⁎ except the salary provided by law."

From the language of the opinion it would doubtless be held that a district judge would be held to be an "officer of the state" within the meaning of that provision of the Constitution, yet, in framing section 36 of article 4, district judges were not thought comprehended within the term "all state officers." This is further borne out by the fact that the Constitution makers apparently did not consider that section 5 of article 5 respecting filling vacancies that occurred in state officers comprehended district attorneys and district judges, because section 4 of article 20 provides:

"If a vacancy occur in the office of district attorney, judge of the Supreme or district court, or county commissioner, the Governor shall fill such vacancy by appointment, and such appointee shall hold such office until the next general election."

This seems clearly to contemplate that state officers, as the term is used in that section, refers to officers elected by the people at large.

The foregoing is in answer to appelants' argument that appellants could be removed from office only by impeachment. The Governor may remove officers appointed by him. Whether this class of officers is also subject to impeachment may be doubted, but is immaterial in this case. However, it might be observed that, if appellants' contention that officers appointed by the Governor with the concurrence of the Senate may not be removed by the governor is correct, and if they are not "state officers" who may be impeached, then it would appear that a numerous class of officers would not be subject to removal at all, and we do not think it was the intention of the Constitution makers to create such a situation.

Furthermore, it is to be observed that the power to appoint and the power to remove are contained in the same sentence of section 5 of article 5 of our Constitution, as follows:

"Sec. 5. The Governor shall nominate, and, by and with the consent of the Senate, appoint all officers whose appointment or election is not otherwise provided for, and may remove any officer appointed by him for incom-

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

petency, neglect of duty or malfeasance in office. Should a vacancy occur in any state office, except Lieutant Governor and member of the Legislature, the Governor shall fill such office by appointment, and such appointee shall hold office until the next general election, when his successor shall be chosen for the unexpired term."

There are but few states having constitutional provisions similar to ours with respect to power of removal of public officers; they being Colorado, Maryland, Pennsylvania, Illinois, Nebraska. West Virginia, and Delaware. The Michigan Constitution provides for removals by the Governor, but contains provisions rendering it dissimilar to those of the states above enumerated. The Constitution of Maryland contains provisions similar to ours, and provides in article 2. § 10, as follows:

"  *   *   * He (the Governor) shall nominate, and by and with the advice and consent of the Senate, appoint all civil and military officers of the state, whose appointment or election is not otherwise herein provided for; unless a different mode of appointment be prescribed by the law creating the office."

And provides in section 15 of article 2 as follows:

"The Governor may suspend or arrest any military officer of the state for disobedience of orders or other military offense, and may remove him in pursuance of the sentence of a court martial; and may remove for incompetency or misconduct all civil officers who received appointment from the executive for a term of years."

In Harman v. Harwood, 58 Md. 1, the court construed the above-quoted sections. The Governor, after a hearing, removed Harman as register of voters. The appointment had been by and with the consent of the Senate. It was contended that the power conferred by article 2, § 15, applied only to officers appointed by the Governor alone. The court held that it applied to all officers appointed by the Governor whether confirmed by the Senate or not. The court said:

"The single question raised in the argument is whether the appellant was an officer liable to be removed for cause under section 15 of art. 2. It is contended on his behalf, that the provisions of that section apply only to such civil officers as have been appointed by the Governor alone, and have no application to the appellant, who was appointed by the Governor with the co-operation of the Senate. This

argument is based upon the words 'all civil officers who received appointment from the executive for a term of years.'

"If this construction were adopted, it would restrict the operation of the section within very narrow limits and entirely defeat its purpose; for under the Constitution and laws, very few officers are appointed by the Governor, without the co-operation of the Senate, and these are mostly temporary appointments merely for the purpose of filling vacancies. But in our judgment this construction is not sound. The term executive, as used in the section, is not to be understood as meaning the Governor alone, for appointments made by him, by and with the advice and consent of the Senate, are known and properly designated as 'executive appointments.' The Senate, in its action upon the nominations of the Governor, is really performing executive functions. But if the word executive is to be understood to mean the Governor, the same result would follow; for in all such cases it is the Governor from whom the appointment is received, although to confirm it, the approval of the Senate is required. * * *.

"We do not entertain any doubt, that according to the true construction of article 2, § 15, of the Constitution, the Governor possessed the power to remove the appellant from office for incompetency or misconduct, and therefore have affirmed the orders of the circuit court."

Lane v. Commonwealth, 103 Pa. 481, involved quo warranto proceedings to test Lane's right to the office of city recorder. Lane was appointed by the Governor, by and with the consent of the Senate, for a term of ten years. The constitutional provisions applicable to the case are as follows:

"Article 4, section 2, of the Constitution of this commonwealth declares 'the supreme executive power shall be vested in the Governor.' Section 8 declares he shall nominate, 'and by and with the advice and consent of two thirds of all the members of the Senate appoint,' certain officers therein named, 'and such other officers of the commonwealth as he is or may be authorized by the Constitution, or by law to appoint.

"Article 6, section 4, inter alia, provides, 'that appointed officers other than judges of the courts of record, and the superintendent of public instruction, may be removed at the pleasure of the power by which they shall have been appointed.'

"Section 1 of the Act of 18th April 1878 declares: 'Recorders of cities of the first class shall be appointed by the Governor by and with the advice and consent of the Senate'."

JANUARY TERM, 1927                           275

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

Lane contended that, as he was appointed by the Governor and Senate jointly, he could not be removed except by their joint action under article 4, § 4. The court held that the Governor was the appointing power, and could remove officers appointed by and with the advice and consent of the Senate just the same as those appointed by him alone. The court reasoned as follows:

"As already shown, the Constitution declares in section 8 cited, the Governor shall nominate and he shall appoint. Before he completes the appointment the Senate shall consent to his appointing the person whom he has named. It may prevent an appointment by the Governor, but it cannot appoint. It may either consent or dissent. That is the extent of its power. There its action ends. It cannot suggest the name of another. If it dissent the Governor cannot appoint the person named. If it consent he may or may not, at his option, make the appointment. If for any reason his views as to the propriety of the proposed appointment change, he may decline to make it. That option is not subject to the will of the Senate. Until the Governor executes the commission, the appointment is not made. Prior to that time at his mere will, he may supersede all action had in the case. Marbury v. Madison, 1 Cranch 137 [2 L. Ed. 60]; Story's Con. § 1540.

"The language of section 8 of the Constitution cited, gives further evidence that the Governor is recognized as the appointing power. Thus he can nominate such officers only as he is or may be authorized by the Constitution, or by law 'to appoint.' Again, the temporary commissions which he may grant to fill vacancies that may happen during the recess of the Senate, is limited to offices to which 'he may appoint.' Thus, whenever and wherever the Constitution speaks of the appointing power, it recognizes it as being vested in the Governor. Nowhere does it declare that the Senate can appoint. The whole tenor and spirit of the Constitution, in speaking of the power of appointment, recognizes that it is lodged in the Governor. He is charged with the duty 'to take care that the laws be faithfully executed.' The Senate may not be in session for a year and a half at one time. The powers of the Governor are never suspended. He is at all times duly authorized to exercise 'the supreme executive power.' The fact that an officer may be removed by the dilatory process of impeachment, creates no argument against the summary power of removal by the Governor. Crime, imbecility or gross neglect of duty may demand that an officer shall be removed at once. The power to protect the people of the commonwealth by prompt action is wisely given to the Governor. In giving construction to the Constitution we cannot assume that he will abuse that high trust. * * *

276    SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

"The present contention is determined by ascertaining in whom the power of appointment is vested. As we have shown, the letter and the spirit of the Constitution both unite in declaring this power to be in the Governor, it necessarily follows that officers appointed by him other than those excepted, may, in the language of the Constitution, be removed at his pleasure."

See, also, Shurtleff v. United States, 189 U. S. 311, 23 S. Ct. 535, 47 L. Ed. 831; Trimble v. Phelps, 19 Colo. 187, 34 P. 981, 41 Am. St. Rep. 236.

Also see Throop on Public Officers, § 344, where the rule is stated as follows:

"A constitutional provision, empowering the Governor to remove 'any officer whom he may appoint,' includes officers appointed by him by and with the advice and consent of the Senate and extends to cases for which other specific remedies are provided."

Appellants cite no decision to contrary of foregoing text.

Appellants invoke the historical facts surrounding the adoption of section 5 of article 5 in support of their contention. It seems to us that, if anything, the historical background sustains the opposite contention. It appears from the proceedings of the constitutional convention that the section as originally reported read as follows:

"The Governor shall nominate, and, by and with the consent of the Senate, appoint all officers whose offices are established by this Constitution, or which may be created by law and whose appointment or election is not otherwise provided for, and may remove any [such] officer * * * for incompetency, neglect of duty or malfeasance in office."

As finally adopted, the words underscored, including the word "such" immediately preceding "officer," were omitted. We think that the change broadened the power of removal instead of narrowing it.

It would have been competent for the framers of the Constitution to provide that officers appointed by the Governor, by and with the consent of the Senate, be removed only with the consent of the Senate, but they did not do so, and the omission may not be ignored. They

did not lack models in this regard. The Constitution of Florida (art. 4, § 15) contained the following provision:

"And the Governor, by and with the consent of the Senate, may remove any officer, not liable to impeachment, for any cause above named."

And four other state Constitutions contain similar provisions (Delaware, Pennsylvania, South Carolina, and Maine).

From all of the foregoing, it is our conclusion that appellants' first point should be ruled against them.

[2] The judgment appealed from should be affirmed because the Governor had the power under section 5 of article 5 of the Constitution to remove Mr. Ulrick and Mr. Chavez without hearing or notice, and the courts have no jurisdiction to pass upon the sufficiency or insufficiency of the evidence; the only judicial question being whether the cause assigned was a legal cause. The process of arriving at this conclusion is one of construction of the provisions of our Constitution.

The question of due process of law is not involved. If the Governor followed the provisions of the Constitution in making the removal, it was valid. If he did not, it was a nullity. The Constitution makers who, either directly or indirectly, create an office, have plenary power to provide how removal shall be made. Whoever accepts an office so created accepts the burdens as well as the benefits. "Every officer, unless removed, shall hold his office until his successor has duly qualified." See section 2, art. 20. He is entitled as a matter of right to so much consideration as the adopters of the Constitution, or the Legislature, see fit to give him—no more, no less. The lawmaking body may provide for removal without notice or hearing or the assignment of any cause. In such a case. removal may be made without notice or hearing or the assignment of cause. It may provide for removal without notice or hearing for specific causes. In such a case removal may be made without notice or hearing, but a cause must be assigned, and it must be one specified in the Constitu-

tion or statute. It may provide for removal on notice and hearing for specific causes, in which case a reasonable notice and hearing must be given, and the removal must be made for a cause found in the written law. Illustrations are not wanting among the Constitutions and statutes of the various states to show that all three of these methods have been adopted. It would seem almost absurd to deny this power to the makers of the Constitution and the Legislature, and yet it seems to be done in many jurisdictions, some courts holding that the right to hold office is a property right protected by the due process clause of the federal Constitution (Amend. 14, § 1), and others that the power to remove is judicial, and therefore must be exercised in a judicial manner. It cannot be denied that there are a large number of cases holding that a public officer who has, under the law, a fixed term of office, and who is removable only for definite and specified causes, cannot be removed without notice and an opportunity to make defense to the charge or charges preferred against him. The student will find an elaborate case note annoting Kendrick v. Nelson, 13 Idaho, 244. 89 P. 755, setting forth these cases in 12 Ann. Cas. 995. The cases so holding are criticized by other courts. The following is a summary given by the Supreme Court of California in the case of In re Carter, 141 Cal. 316, 74 P. 997, in dealing with a similar list of cases. The court said:

"There are some cases, however, holding that where the statute prescribes no preliminary proceeding, but authorizes a removal 'for cause,' there must be a notice and hearing, and that in such cases the proceeding is judicial [citing cases]. The basis of these decisions, sometimes expressly stated, but always apparently assumed, is that the right to hold public office is a species of property which is protected by the provisions of the United States Constitution, declaring that no person shall be deprived of property without due process of law, and that no law shall be passed impairing the obligation of contracts. This proposition is assumed without argument. There is no doubt that it is erroneous. A public office is a mere public agency created by the public for the purpose of the administration of the necessary functions of organized society, and the agency may at any time be terminated by the power which created it. As between the officeholder and individuals in their private capacity, and perhaps as against any authority except the soverign power itself acting in pursuance of a

JANUARY TERM, 1927                    279

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

power of removal expressly reserved or necessarily implied
from the nature of the office, the officer is entitled to the
full protection of the law in his right to hold the office,
practically to the same extent as if it were private prop-
erty. But here we have a controversy between the office-
holder and that functionary of sovereignty who is invested
with the power of removal, and the question is whether
or not the officer has a right to the office which the
sovereign power which conferred it must respect as pri-
vate property. The authorities are uniform that in such
a controversy the office has not the characteristics of
property. Throop on Officers, §§ 345, 346, 17-19; Conner
v. Mayor, 5 N. Y. 296; Id., 2 Sandf. [4 N. Y. Super. Ct.]
369; Nichols v. McLean, 101 N. Y. 533, 5 N. E. 347, 54
Am. Rep. 730; Hoboken v. Gear, 27 N. J. Law, 273; Kenny
v. Hudspeth, 59 N. J. Law, 322, 36 A. 662; State v. Council,
53 Minn. 242, 55 N. W. 118, 39 Am. St. Rep. 595; Dona-
hue v. County, 100 Ill. 94. In the case cited the court
says: 'It is imposs'ble to conceive how, under our form
of government, a person can own or have title to a gov-
ernmental office. Offices are created for the administra-
tion of public affairs. When a person is inducted into an
office he thereby becomes empowered to exercise its pow-
ers and perform its duties, not for his but for the public
benefit. It would be a misnomer and a perversion of terms
to say that an incumbent owned an office or had any title
to it. * * * The officer does not own the title to the
office in the manner that men own property, but by his
commission or induction into office he acquires the legal
right to exercise its functions until the end of his term,
or until his resignation, removal, or its forfeiture'."

The Supreme Court of Oklahoma, in the latter case of
Bynum v. Strain, 95 Okl. 45, 218 P. 883, said:

"Some 25 or more decisions from about 16 different
states are cited and quoted from by defendant on the
question of power of removal from office and how it
should be exercised. We have reviewed these decisions
and classified them according to the subject-matter before
the court, the nature of the offense to be determined, the
character of the office under consideration, and the lan-
guage of the law upon which they were rendered. It
would serve no useful purpose to set out an analysis of
each decision cited. Some have dealt with subject-matter
altogether different from that under consideration here;
some have dealt with and determined offenses against the
law itself, which in the very nature of our system of gov-
ernment must be determined by the courts; in some the
right to an elective office, for a specified term, was in-
volved, a wholly different proposition to that involved in
the removal of an appointee from a nonelective position in
a subordinate branch of the executive department. The
elective officer is responsible directly to the electorate; he
is elected by the voters, and the public has a right in his
tenure of office, a right which can be properly determined

280    SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

by the courts only, and the courts have universally and very properly so held. But a different principle is involved in the case of an appointee to an appointive position in a subordinate branch of the special sphere of duties and responsibilities of the chief executive."

We shall not attempt to analyze these cases. Perhaps something ought to be said concerning Dullam v. Willson, 53 Mich. 392, 19 N. W. 112, 51 Am. Rep. 128, because appellants cite it as one of the leading cases on the subject in the United States. It has undoubtedly been cited as a supporting authority in a great many other cases by the courts of other states The material part of the constitutional provision invoked in that case is as follows:

"The Governor shall have power and it shall be his duty, except at such time as the Legislature may be in session, to examine into the condition and administration of any public office, and the acts of any public officer, elective or appointed, to remove from office for gross neglect of duty, or for corrupt conduct in office, or any other misfeasance or malfeasance therein, either of the following state offices, to wit: The Attorney-General, * * * or any other officer of the state, except legislative and judicial, elective or appointed, and to appoint a successor for the remainder of their respective unexpired term of office, and report the causes of such removal to the Legislature at its next session." Const. art. 12, § 8.

Judge Champlin made a point of the fact that "article 5 relates to the executive departments; and while section 6 provides that the Governor 'shall take care that the laws be faithfully executed,' still the amendment under consideration was not added as a part of that article, but was added to article 12, which relates to 'impeachments and removals from office.' "

In New Mexico the provision under consideration is found in article 5 relating to the executive department, section 4 of which provides, as did the Michigan Constitution under executive powers, that:

"The supreme executive power of the state shall be vested in the Governor, who shall take care that the laws be faithfully executed."

Under the Michigan Constitution, the removal power extends to officers both elective and appointed; under New Mexico to only officers appointed by the Governor.

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

In Michigan the power could only be exercised during a recess of the Legislature, from which it may be argued that the Governor, being able to exercise the power only during a recess of the Legislature, should exercise it in the same manner in which the Legislature would exercise the power of removal by impeachment, were it in session.

"He acts in the place of a court of impeachment during the time the Legislature is not in session." Judge Champlin's opinion, 53 Mich. page 400, 19 N. W. 116.

"The evident purpose of the amendment was to provide that the Governor should have power during the recess to secure the removal of such persons as would be legally impeachable during the session." Judge Campbell's opinion, 53, Mich. p. 420, 19 N. W. 126.

One thing which strongly moved the majority court to its conclusion was the fact that the executive power of removal extended to elective officers as well as appointed, and Judge Campbell thought that it was absurd to suppose that the purpose was entertained when the amendment of 1861 was adopted of confining the legal rights of the elected officers of the state to the brief period of a session of the Legislature.

"The impossibility of sustaining the Governor's action here will further appear by comparing its necessary results with the rest of our constitutional scheme of government. If he could remove respondent as he did it is only because, as is freely admitted by counsel, the restrictions on his power are not obligatory, and his only restraint is his sense of propriety; or, in other words, he has unlimited discretion to do as he pleases. No legislative session can be called during his term of office except by himself; and the removal enables him to appoint for the whole remaining term of office, so that his nominee could only be displaced by his successor, acting under the same absolute power, and in such offices as are most important, and are held by terms of two years, could not be removed at all. If this can be done every officer of the government may be removed as soon as the Legislature adjourns, and every office can be filled by the Governor's nominees, and the whole elective system will be annuled."

And again Judge Campbell said:

"It would be nothing short of absurdity to claim that any purpose was entertained, when the amendment of 1861 was adopted, of confining the legal rights of the elected officers of the state to the brief period of a session of the Legislature, leaving it open to the Governor to fill all the offices for the remainder of his own two-years term. And the Amendment does not sanction such an interpretation, according to the rules of legal construction."

No such situation confronts us. We do not have anything like the same situation to deal with as confronted the Michigan court. The apprehension of dangers from a wholesale change in officers under the Michigan amendment to its Constitution proceeded upon the assumption that the executive might remove every officer of the government, both elective and appointed. "If this can be done every officer of the Government may be removed as soon as the Legislature adjourns, and every office can be filled by the Governor's nominees, and the whole elective system will be annulled." This reasoning was invoked as an argument by the Michigan court to show that the adopters of the constitutional amendment could not have intended such a possible contingency, and therefore, by implication, the check of judicial review must have been intended.

Whatever may be said as to the force of this argument under the situation presented to the Michigan court, no such extreme results could occur under our Constitution. No elective officer may be removed by the Governor. All the constitutional officers are elective. And there are but few state officers appointed by him, and only his appointees may be removed by him, and apparently most, if not all, of the officers which may be appointed by him are such as have to do with the executive department of the state government.

Judge Champlin seeks to show that judicial power was vested in the Governor in cases of removals under the provisions of the amendment; some emphasis being put on the phrase in the amendment which confers upon the Governor the power and makes it his duty " 'to examine into the condition and administration of the of-

JANUARY TERM, 1927          283

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

fice and public acts of the officers.' '' The phrase is repeated in the argument, and is used once in the following quotation from the opinion of the court:

'"That under the amendment the Governor was vested with the power of determining whether the specified causes exist, appears to me too plain for serious contradiction. I fully concur in the views expressed upon this point by the learned counsel for the respondent (Judge Christiancy), wherein he says: 'It was competent, by constitutional amendment, to authorize him to exercise such judicial power. And while this amendment gives the power of removal only for the causes which it specifies (which, though similar in character, are not identical with those specified in the statute,) and the question of the officer's guilt is one judicial in its nature, yet the amendment imposes a duty and confers upon the Governor the power "to examine into the condition and administration of the office and public acts of the officers" to which it applies, and to remove them from office for the causes there enumerated; thus, in effect, giving him the right to try the question whether the officer is guilty or not, and to remove him from his office'."

Just how far the power of examination here vested confers judicial power to conduct a hearing judicial in its aspects we are unable to say, but some store was put by the phrase in the construction given it by the court, with the exception of Judge Campbell, who concurs specially.

Even if we were to concede that, at the time of the adoption of the Constitution, the weight of authority was as claimed by appellants, it would not follow that our constitutional provisions on removal power of the Governor should be construed in accordance therewith. If there had been no expressions of our own court on the subject prior to the adoption of the Constitution on removals, it might be assumed that the Constitution was framed in view of a consideration of the majority holdings of the courts. But our court had in Conklin v. Cunningham, 7 N. M. 445, 38 P. 170, in 1894, aligned us with the jurisdictions holding to the so-called minority view. In an article by Mr. Alonzo H. Tuttle, appearing in the February and March issues of Michigan Law Review for 1905, on ''Removal of Public Officers for Cause,'' referring to the decisions of the state courts, appears the following:

284     SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

"In the states, the question is far more unsettled. The matter here is almost entirely covered by Constitution or statute and depends therefore upon the peculiar provisions therein contained. The cases, which are numerous, differ upon almost every conceivable phase of the question. This is due to the facts: (1) The question is a comparatively new one. (2) The cases are the result of fierce political controversy, and the courts are biased thereby. (3) A failure on the part of some courts to recognize that while a public office in England and at common law is an incorporeal hereditament it is not so in this country. (4) A complete inability of the courts to come to any agreement as to what constitutes a judicial or quasi judicial power. * * *

"The unsettled propositions are:

"1. Where power is given 'to remove' or to remove for specified cause or causes, or to remove 'for cause' is the power an arbitrary one or does it require charges, notice and a hearing?

"2. If the latter is necessary what must be the character of the hearing—must the witnesses be sworn? etc. What must be the character of the charges, and must they be of offenses committed during the incumbent's term or may they be of offenses committed prior thereto?

"3. Is the power to remove for cause an administrative or a judicial power?

"4. If judicial, may it constitutionally be given by statute, to the Governor or other executive officer of the state?

"5. If not judicial in the sense that it may not be exercised by the executive department is it judicial in the sense that it may be reviewed by the courts of certiorari?

"6. If it may be reviewed, will the court only inquire as to jurisdiction, or will it go further and examine the evidence? * * *

"II. Many constitutional provisions and statutes are found which confer the power to remove for certain specified causes, as embezzlement, malfeasance, etc. Whether such a provision requires notice, charges and a hearing is a question upon which the courts widely disagree. A learned writer has said that Illinois is the only state which has held that in such cases these things are not necessary. This is manifestly incorrect, for decisions to this effect can be found not only in Illinois but also in New Jersey, Louisiana, Arkansas, Texas, New Mexico, North Dakota, and Wisconsin. One of the very strongest statements of this side of the question is found in Conklin v. Cunningham, recently decided by the Supreme Court of New Mexico. In this case sheriffs elected for a term of years were removable by the Governor for certain specified causes. With-

JANUARY TERM, 1927                                   285

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

out any notice of hearing whatever the Governor removed a certain sheriff, stating in the order of removal that he was guilty of the offense provided for in the statute. The court upheld this summary removal, holding that notice and a hearing were not necessary; that the statement of the Governor that he was guilty must be deemed conclusive by the court. This is an especially extreme case because the law in question provided that officers thus removed could never again hold office.

There is no question, however, that the great weight of authority is to the contrary."

In Conklin v. Cunningham, supra, we said (italics ours) :

"That the executive acted within the limits of his authority is a conclusive presumption in this proceeding; that he was authorized by the statute to remove for causes specified in the section under which he acted, and to appoint to the vacancy, and issue his commission, are not less undisputed legal conclusions in this action; and that Conklin ceased to be sheriff by the one executive order and Cunningham became, prima facie, such official, by the other, is the law's operation, so pronounced that it cannot be controverted, except in an action contesting the legal title to the office. The three departments of our government—legislative, executive and judicial—though coordinate, are distinct, and, within their respective lines, separate and independent, and, within their prescribed scope, absolute. In the exercise of the powers confided to his discretion and in the performance of the duties imposed upon him, the executive is independent of the judiciary; and presumptively his acts are within the limitations of his authority, and must be recognized by the judicial tribunals. Prima facie, the order of removal in this case was a legal exercise of executive authority; and the appointment of Cunningham constituted a commission that was evidence, prima facie, that he was lawfully entitled to the sheriffalty, and imposed upon the contestant the burden of showing a better title by an action in the nature of quo warranto. [Whetstone v. Thomas] 25 Ill. 325; [State ex rel. Jackson v. Howard County Court] 41 Mo. 247; [Wenner v. Smith, 4 Utah, 238] 9 P. 297; [Plowman v. Thornton] 52 Ala. 559; 14 Am. & Eng. Encyclopedia of Law, cl. 3, p. 143, and citations there made.

"An appointment to office by the executive is complete upon the delivery of the commission. Marbury v. Madison, 1 Cranch [137, 2 L. Ed. 60] (U. S.); Wetherbee v. Casneau, 20 Cal. 503. We think that, when the Governor appointed and commissioned the plaintiff, he gave him prima facie title to the office. [Whetstone v. Thomas], 25 Ill. 325. The Commission of the Governor, when issued, must be taken at least as prima facie evidence that the person holding it is lawfully entitled to the office. [State ex rel.

Jackson v. Howard County Court], 41 Mo. 247. The powers of a Governor are executive, not judicial, and they must be exercised promptly, to be effective. Notice to a defaulter is invitation to repair deficiency with a view to retention of office. To afford opportunity to make good delinquency is to protect the violator of a trust, and to supplant summary action by judicial investigation. The impending penalty of removal is to deter breach in office, and to encourage fidelity and promptness in the discharge of its duties. Trial is not an executive function, and its assumption would be the emasculation of executive efficiency. The section under which the Governor proceeded is mandatory, and directs summary action, quick execution, and that it is impracticable to attain such a result by the dilatory process of charges and defenses is manifest. A summary end by prolix means is'an impossible achievement. So inconceivable is the rapidity in the redress of wrongs by tedious and vexatious remedies, that it is not legitimate to impute such contradiction to the Legislature, unless it shall appear in express terms, and the omission of any requirement of notice from the provisions of section 27 must be regarded as the expression of an intention that notice should not be an essential to its enforcement."

We think the situation in that case presented a much stronger demand upon the court to find reasons to repel the doctrine of arbitrary power or removal than is present in the case at bar. There the office was elective, and, in addition to removal, the statute provided the further deprivation of disqualification for holding office thereafter.

In the case of Territory v. Armijo, 14 N. M. 205, 89 P. 267, it was decided that the executive power vested in the Governor of New Mexico by the Organic Act does not include the right to remove an officer elected in accordance with a statute law of the territory. The court concluded its opinion in the following language:

''We conclude, then, that the power to remove from office a lawfully elected sheriff in this Territory is not by the Organic Act vested in the Governor, and that until otherwise provided by Congress, the Legislative Assembly has the right by appropriate legislation to determine the method of removal. Where the power is, there rests also the responsibility for its proper exercise. That a speedy and efficacious way for removing from office incompetent and dishonest officials is absolutely essential to good government there can be no doubt."

This expression is singularly like the language of Mr. Justice Peckham in the case of Shurtleff v. United

JANUARY TERM, 1927 . 287

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

States, 189 U. S. 318, 23 S. Ct. 537 (47 L. Ed. 828) that:

"The only restraint in cases such as this must consist in the responsibilty of the President under his oath of office, to so act as shall be for the general benefit and welfare."

That the attitude of the New Mexico Supreme Court was well known is further indicated by the note to Kendrick v. Nelson, 12 Ann. Cas. 995, supra, wherein it was stated:

"In a few jurisdictions it is held that a public officer holding for a fixed term, subject to removal for specified causes, may be removed without notice and hearing. People v. Higgins, 15 Ill. 110; Wilcox v. People, 90 Ill. 186; People v. Mays, 117 Ill. 257, 7 N. E. 660; Conklin v. Cunningham, 7 N. M. 445, 38 P. 170; Freeman, J., dissenting.

So we think that clearly the only question arising on the point under consideration is: Does the Constitution require the giving of a notice or hearing and an opportunity to be heard as a condition precedent to removal? If it does not, whatever was accorded to the appellants in the way of a notice and hearing was given as a matter of grace, and not of right, and they have no cause to complain about the inadequacy of the opportunity afforded to be heard. In this connection, it will be observed that the Constitution does not expressly provide for notice or hearing, and, if either is required, it must be found by implication. It may be further observed that such requirements cannot be interpolated into the Constitution, unless it is apparent that the Constitution makers intended that they should be. When we consider the history of this constitutional provision contained in section 5, art. 5, of the Constitution, it is about as certain as anything of the kind can be that there was no such intent on the part of the Constitution makers. When the Constitution makers came to consider the question of removals from office, and to write into the Constitution the provision which should express their intent in this respect, they had before them a comprehensive scheme for removals of officers which were contained in the Acts of the Legislature from an early date in the territory of New Mexico, some of them running back to 1846. Some of these acts provided for

288 SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

notice and hearing, and some did not. Nearly one-third of the members of the Constitutional Convention were lawyers, and more than one-half of the members on the committee on revision and arrangement of the Constitution were lawyers.

Approaching their labors they were bound to observe that it had been the uniform practice of the territorial Legislature to expressly provide for a notice and hearing as a condition precedent to a removal from office, where it was intended that no removal should be made without such notice and hearing. And it is interesting to observe that in at least one instance, while notice and hearing were provided for, the Legislature specifically declared that it was not a judicial question, saying:

"No such discharge shall be reviewed or interfered with by any court of this state." Section 5, c. 76, Laws 1889; Code 1915, § 5022.

They were conversant with the constitutional provisions of other states, some of which provided for removal only upon notice and hearing, and some of which did not. They had before them the report of the committee on judiciary department, section 34 of which was as follows:

"All officers not liable to impeachment shall be subject to removal from office for misconduct or malfeasance in office in such manner as may be provided by law."

It will be observed from said report that the causes for removal were named, but it was proposed to leave to the Legislature to enact laws governing the procedure therefor under the clause, "in such manner as may be provided by law." The Constitution makers, however, adopted the recommendations of the committee on the executive department placing the power of removal in the Governor, and did not provide the "manner" in which the removal should be made, and refused to adopt the recommendations of the committee on judiciary to leave to the Legislature the subject of providing the "manner" in which officers might be removed. It seems to us that the Constitution makers had clearly before them the whole policy of removals

JANUARY TERM, 1927          289

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

from office. They provided that the Senate, when sitting as a court of impeachment, be vested with judicial power. They did not vest the Governor with judicial power. They provided that all state officers and judges of the district court shall be liable to impeachment for crime, misdemeanors, and malfeasance in office after a trial by the Senate upon notice according to the law and the evidence; thus providing the "manner" of impeachment. But they did not, when reposing the power of removal in the Governor of officers appointed by him, specify any manner of procedure for such removals.

With this knowledge before them on the subject which must be imputed to the Constitution makers, we agree with the opinion of the court in Conklin v. Cunningham, supra, that the omission from the provision on removals of any requirement of notice or hearing must be regarded as the expression of an intention that notice or hearing should not be essential to the enforcement thereof.

It is fair to assume that the Constitution makers thought that a person who could be trusted to fill the office of Governor could be trusted to deal fairly with office holders whom he was empowered to appoint, and that cases might arise where prompt action was necessary for the public good, and that it was not wise to tie the hands of the Governor when such action might well work to the detriment of the state. Governmental power must be vested somewhere, and the fact that it may be abused does not prove that the power must not be conferred.

In Ex parte Bustillos, 26 N. M. 449, 194 P. 886, we commented on the power of the chief executive of the state as follows:

"The pardoning power in this country is usually, if not universally, conferred by constitutional provisions, and it is usually conferred upon the Governors of the respective states, unrestrained by any direct limitations of law. The head of the executive department is believed by the American people to be generally so self-restrained, so imbued with patriotism, so conscious of the responsibilities of his high

290     SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

office, that he will never abuse the power and will always exercise the same in the interests of the state as a whole, to the exclusion of all sordid, personal, political, or other ulterior motives. This is as it should be. Public officers, to be strong and effective, must have power and responsibility. If their activities are so circumscribed by restrictions as to prevent all initiative and independence, their power for good in behalf of the people will be greatly minimized. They may sometimes go astray; but the damages thereby to the state will be negligible, compared to the damage resulting from weak and dwarfed public service."

And, as said in Bynum v. Strain, 95 Okl. 45, 218 P. 883, supra:

"An appointee to such a position is selected by the chief executive for the purpose of aiding the executive in carrying out his sense of duties and responsibilities to the public and with the belief that such appointee will work in harmony with and aid the Governor in fulfilling his sense of duty to the public. It is the Governor, the chief executive, who is held responsible to the sovereignty for errors in his executive and administrative policies. The appointee is responsible to the chief executive, and, in the absence of express authority, the judiciary has nothing to do with the chief executive's judgment, conscience, sense of duty, or responsibilities."

It is worthy of note that but few states have constitutional provisions on removals from office similar to ours. The Illinois Constitution of 1870 is one of these, section 12 of the fifth article being as follows:

"The Governor shall have power to remove any officer whom he may appoint, in case of incompetency, neglect of duty, or malfeasance in office; and he may declare his office vacant, and fill the same as is herein provided in other cases of vacancy."

Wilcox v. People, 90 Ill. 186, construing that provision, is regarded as the leading case supporting the construction we have adopted. The court said:

"It being found that the power of removal existed in the Governor, the inquiry remains whether it was validly exercised. Relators say not—that the power granted was judicial in its nature, and should have been exercised according to judicial methods, that is, there should have been a specific charge, notice of it, opportunity for defense and hearing, and proof to support the charge. Undoubtedly the Governor can only remove for some one of the causes specified; but the removal here was for one of these causes—incompetency. The Governor ascertained the existence of the cause here, and made the removal on ac-

count of it. The Constitution is silent as to who shall ascertain the cause of removal or the mode of its ascertainment. It simply gives to the Governor the power to remove any officer whom he may appoint, in case of incompetency, etc. It follows, then, that it is the Governor, who is to act in the matter to determine, himself, whether the cause of removal exists, from the best lights he can get, and no mode of inquiry being prescribed for him to pursue, it rests with him to adopt that method of inquiry and ascertainment as to the charge involved which his judgment may suggest as the proper one, acting under his official responsibilty, and it is not for the courts to dictate to him in what manner he shall proceed in the performance of his duty, his action not being subject to their revision. The Constitution of this state not only declares that the powers of the government of the state shall be divided into three distinct departments, but has expressly prohibited the exercise of any of the powers properly belonging to one by either of the others."

The present case is one where a very important office is at stake, but the section of our Constitution under consideration makes no distinction as to the grade of importance of the offices filled by the appointment of the Governor, and the principles decided apply as well to every ministerial officer, however significant, whose removal is provided for therein.

Our conclusions are:

(1) A public office is not property, and the right to hold it is not a vested one.

(2) The constitutional convention had the power to prescribe any method of removal from office as it might see fit, and a removal made by the prescribed method is due process of law.

(3) Where no provision of the Constitution or of the statute law requires that notice and hearing be given before a removal can be made, neither notice nor hearing is a necessary condition precedent to a valid removal.

(4) It was the intention of the constitutional convention when framing the Constitution, and the people when adopting it, that the Governor might remove the officers appointed by him without notice or hearing.

(5) When the determination of a question of this kind is vested in some tribunal other than the courts,

and no appeal from or review of the decision reached is provided by law, such decision is final and conclusive, if such tribunal acts within its jurisdiction.

(6) The only inquiry left open to the court in this sort of proceeding is whether the cause assigned for removal is one for which the Constitution authorizes a removal to be made. If it is, the Governor acted within his jurisdiction in making it, no matter how grievously he might err in judgment.

(7) The order of removal in this case assigns a constitutional cause for removal, and is therefore conclusive on the courts.

It follows that the judgment of the lower court must be affirmed, and it is so ordered.

Watson, J., concurs in the result.

PARKER, C. J. I am compelled to dissent from the conclusion reached by the majority of the court.

The fundamental question involved is the question of power of the Governor in the premises. The provision on this subject as originally reported to and adopted by the constitutional convention was as follows:

"The Governor shall nominate and, by and with the consent of the Senate, · appoint all officers whose offices are established by this Constitution, or which may be created by law, and whose appointment or election is not otherwise provided for, and may remove any such officer for incompetency, neglect of duty, or malfeasance in office."

See Proceedings of Constitutional Convention, p. 99.

This is an exact copy of the Colorado provision on the subject. See Roberts v. People ex rel. Hicks, 77 Colo. 281, 235 P. 1069. This provision, together with all others which had been reported to and adopted by the convention, was referred to the committee on revision and arrangement, which committee reported the same back to the convention in the form in which it was finally adopted, which is as follows:

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

''Sec. 5. The **Governor shall nominate** and, by and with the consent of the Senate, appoint all officers whose appointment or election is not otherwise provided for, and may remove any officer appointed by him for incompetency, neglect of duty or malfeasance in office. Should a vacancy occur in any state office, except Lieutenant Governor and member of the Legislature, the Governor shall fill such office by appointment, and such appointee shall hold office until the next general election, when his successor shall be chosen for the unexpired term.''

It is to be observed that the section, as finally adopted, marks a wide departure from the letter and spirit of the provision as originally reported to the convention. As originally reported, the section authorized the removal by the Governor of officers appointed by him, with the consent of the Senate, and none others. It is so held in Colorado. See 77 Colo. 281, 235 P. 1069, above referred to. There must have been some important reason in the minds of the members of the convention causing them to make the change above pointed out. Unfortunately the journal of the convention furnishes no report of any discussion of the subject, and we are left to an interpretation of the section without any aid from such source. It is likewise unfortunate that we can obtain no aid from the other states; there being no other Constitution like ours. The nearest approach to our Constitution, so far as language is concerned, occurs in the states of Illinois, Nebraska, and West Virginia. In each of these states, however, the language used in specifying the officers who may be removed by the Governor, is ''any officer whom he may appoint.'' This language, in meaning, is vastly different from our provision. They provide for the removal of officers whom the Governor may appoint; that is, those whom he has the power in any event to appoint. But not so in our case. Here the Governor can remove only such officers as he has appointed. It is perhaps true, as elsewhere held, that, although the consent of the Senate is required before certain officers may be appointed by the Governor, he, nevertheless, makes the appointment. It is so held in Harman v. Harwood 58 Md. 1, and Lane v. Commonwealth, 103 Pa. 481. But this is not the case here. The question is as to the sense in which the words

294 SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

"appointed by him" were used by the constitutional convention. If the convention had intended that the Governor should have power to remove officers confirmed by the Senate, it certainly would have retained the language employed in the original section as reported to the convention above set out, and as embodied in the Colorado Constitution. The convention must have meant something else. There is provision in the Constitution for the appointment of officers by the Governor alone, and without the concurrence of the Senate. Section 4 of article 20 provides that, in case of a vacancy in the office of district attorney, judge of the Supreme or district court, or county commissioner, the Governor may fill such vacancy by appointment to last until the next general election. Section 5 of article 20 provides that, if the Senate is not in session, and a vacancy occurs in any office where the incumbent is appointed by the Governor with the consent of the Senate, the Governor may appoint to fill the vacancy until the next session of the Senate. Article 20 is an article of miscellaneous provisions, and was evidently adopted to cover omissions in the main body of the Constitution. It thus appears that the removal power of the Governor, mentioned in section 5 of article 5, has subject-matter on which to operate aside from those officers required to be confirmed by the Senate.

It is suggested that, had the constitutional convention so considered the scope and meaning of the provision of section 5 of article 5, the same would have been inserted in article 20, where the provisions for appointment by the Governor alone are contained. This is not conclusive. The Constitution must be interpreted as a harmonious whole, and each provision must have its proper importance and effect. The arrangement of the provision is not controlling, in the absence of some other consideration by way of language or subject-matter or other rule of construction. It seems clear, therefore, that the constitutional convention intended to restrain the power of the Governor to remove from office to such officers as are appointed by him alone and without the concurrence of the Senate. This result is in

JANUARY TERM, 1927 295

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

accord with the general trend of opinion in America. Some believe in the concentration of power in the executive, giving him full power to control all of the executive functions, and holding him alone responsible to the people. Coupled with this idea is the principle of the recall whereby an executive found to be unworthy may be stripped of his office and prerogatives. But these ideas have found no place in our institutions. We have adhered to the ancient landmarks. We have provided that public officers shall either be elected by the people, or appointed by the executive with the concurrence of the legislative branch of the government, or, in case of vacancy of office, appointment may be made temporarily by the Governor. When once seated in office, the officer is secure in his tenure, except in cases where the Governor alone appoints, or where the offenses are sufficient to warrant impeachment. In this connection it is suggested that impeachment is not applicable in cases like the present, and that therefore there is no way to get rid of an unworthy appointee if the Governor has not the power of removal. Our provision is section 36 of article 4, which is as follows:

"Sec. 36. All state officers and judges of the district court shall be liable to impeachment for crimes, misdeameanors and malfeasance in office, but judgment in such cases shall not extend further than removal from office and disqualification to hold any office, of honor, trust or profit, or to vote under the laws of this state; but such officer or judge, whether convicted or acquitted shall, nevertheless, be liable to prosecution, trial, judgment, punishment or civil action, according to law. No officer shall exercise any powers or duties of his office after notice of his impeachment is served upon him until he is acquitted."

The provision is broad, and includes "all state officers." If a state tax commissioner is not a state officer, it is hard to define his status. Under a provision of the Colorado Constitution, much less clear and explicit, it was declared that a civil service commissioner was a state officer, and subject to impeachment. See 77 Colo. 281, 235 P. 1069. above referred to. While it is true that it is often held otherwise, the holdings are based on the phraseology of the constitutional provisions of the various states. State v. Grant, 14 Wyo. 41, 81 P.

296     SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

795, 82 P. 2, 1 L. R. A. (N. S.) 588, 116 Am, St, Rep, 982, is an example. The constitutional provision there is different from ours. There the language is, in section 18 of article 3:

'The Governor and other state and judicial officers * * * shall be liable to impeachment."

Section 19 of article 3 provides that all officers not liable to impeachment shall be removable by the Governor in such manner as may be provided by law. These impeachment and removal provisions are common to those of Colorado, Montana, Nevada, North Dakota, South Dakota, Utah and Washington, and the impeachment provision is the same in Arizona. The Wyoming court relies much upon the Washington court's reasoning which is to the effect that, in order to give effect to section 19, above noticed, it must be held that the impeachment provision can apply to superior executive and judicial officers only; otherwise the removal provision would be superfluous. This case is followed, and more elaborate argument and citation of cases is had upon In re Opinion of the Justices, 167 Mass. 599, 46 N. E. 118, where it is held that a county commissioner was not subject to impeachment. The opinion is undoubtedly reached because county commissioners are in no sense "officers of the commonwealth," but are county officers. That court concluded that only elective state officers were subject to impeachment, although that was not necessary to a decision of the case.

It has been suggested that perhaps the Constitution itself defines "state officers," and that they must be held to be officers elected by the state at large. The last sentence of section 5 of article 5 provides that, in case of a vacancy in any state office, except Lieutenant Governor and members of the Legislature, the Governor shall fill the office until the next general election, thus showing, it is said, that state officers are elective officers. It may be that the officers referred to here are elective state officers, but we do not deem this significant in determining the definition of state officers within the impeachment provision. This is mere-

ly a provision for the filling of vacancies in elective state officers. Likewise the provisions of section 4 of article 20 provide for the appointment of officers to fill vacancies until the next general election, but some of the officers named are state officers, and some are local or county officers. It is merely a provision to fill vacancies, and does not define state officers. In Ward v. Romero, 17 N. M. 88, 125 P. 617, we held that a district attorney is a state officer within the meaning of section 9 of article 20, which is a provision in regard to compensation of state officers.

We are convinced that a state tax commissioner is a state officer, and as such liable to impeachment. His duties are state wide, and he has to do in a general way with the equalization and collection of the revenues of the state. It is so held in Roberts v. Hicks, 77 Colo. 281, 235 P. 1069. in referring to a civil service commissioner appointed by the Governor. The causes for removal and for impeachment, as specified in the Constitution, are different except in one instance; that is malfeasance in office. The causes for removal are much broader than those for impeachment. An officer cannot be impeached for incompetency or neglect of duty, but may be removed. This consideration, however, I do not deem to be controlling. The question is not, What should have been provided by the Constitution? It is, What has been so provided? If it is deemed proper by the people to extend to the Governor larger powers of removal than have been extended, it may easily be done by a constitutional amendment clearly giving the power. I think that the power attempted to be exercised in the present case does not exist.

### On Motion for Rehearing.

WATSON, J. Appellant Ulrick has moved for a rehearing. I am authorized to say that Mr. Justice BICKLEY concurs with me in overruling the motion.

When the original decision was announced, I was content merely to concur in the affirmance. In view of the importance of the questions discussed, both or-

iginally and on the motion, and since I am not entirely in accord with the views expressed by either of my brothers, I have concluded that it is incumbent upon me to state my position.

The CHIEF JUSTICE holds that the Constitution does not confer power on the Governor to remove officers appointed by and with the consent of the Senate. His argument rests upon the change in the removal provision, as finally adopted, from the original form in which it passed the convention. I agree with Mr. Justice BICKLEY that the change broadened, rather than narrowed, the power.

If, as the CHIEF JUSTICE holds, the section, as finally adopted, marks a wide departure from the letter and spirit of the provision as originally passed, then I agree that there must have been an important reason therefor. No reason is assigned, except the suggestion that the convention decided it had gone too far in conferring power and responsibility upon the executive.

The conclusion of the CHIEF JUSTICE involves one of two suppositions: Either the convention deliberately reversed itself, or else its committee on revision and arrangement reported a contrary provision, which passed the convention unnoticed. I do not think either of these suppositions warranted.

It was not the duty of the committee to change the substance or true meaning of provisions which had passed the convention and had been referred to it. Its duty was to arrange, collate, and clarify. Reasoning from the standpoint of the committee's duty, and crediting it with understanding thereof, and adherence thereto, I cannot admit that it assumed or intended to embody a provision exactly the contrary of that which was referred to it as representing the will of the convention, unless that conclusion is unescapable.

The conclusion is not unescapable. Indeed, there is another possible, and, I think, a more probable, ex-

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

planation. The convention had decided to give the Governor power to remove officers appointed by and with the consent of the Senate—far the more important class of appointive officers. It would naturally follow that the convention would wish and intend the Governor to have the power to remove those appointed by him alone. Given the larger and more important power, no good reason suggests withholding the smaller. Wilcox v. People, 90 Ill. 186. The lesser power was not, however, expressly conferred by the provision which passed the convention and came to the committee by reference. Perhaps the committee foresaw the contention successfully urged in Roberts v. People ex rel. Hicks, 77 Colo. 281, 235 P. 1069, where the Colorado Supreme Court held that just such a provision gave power to remove officers appointed by and with the consent of the Senate, but not to remove those appointed by the Governor alone. The committee might reasonably have considered that, in changing the provision to include all appointed officers, it was acting in harmony with the recorded will of the convention; merely stating expressly what it deemed already included by inference. If the committee intended to exclude power to remove those officers whom the convention had already subjected to removal, it could not possibly have considered that it was proceeding in harmony with the expressed will of the convention. It must have recognized that it was assuming to reverse it. I think that the correct presumption is against the change in spirit which the CHIEF JUSTICE assumes to have originated in the committee.

The intent of the convention itself is perhaps more likely to appear in the original provision, adopted independently and on its own merits, than in the final draft adopted after being reported as a whole from the committee on revision and arrangement. Of course, it is the final expression of the convention that binds us. If that clearly excluded power to remove officers appointed with senatorial sanction, the question would be settled. But Brother BICKLEY has shown, on

300    SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

principle and authority, that it does not. Referring, in the effort to interpret, to the earlier expression of the convention's will, merely serves to strengthen the conviction that it was not intended to exclude that power.

A practical question is: What officers are to be removed by the Governor, if not those whom he appoints by and with the consent of the Senate? The CHIEF JUSTICE mentions those who may have been appointed to fill vacancies until the next general election, or until the next session of the Senate. Power to remove such vacancy appointees is so relatively unimportant as not likely to have engaged the serious consideration of the convention, independently of the subject of removals in general. No reason occurs why the convention would have deemed it important to protect the public service from the incompetency, neglect of duty, or malfeasance of vacancy appointees, and unnecesary in the case of full term appointees. I do not understand that the difference is in their being subject or not subject to impeachment. A state treasurer, for instance, is a state officer, I suppose, whether duly elected or duly appointed to a vacancy, and as such subject to be impeached Whether, having been appointed to a vacancy, he is subject to removal, I do not consider. Neither do I consider whether a tax commissioner, as a state officer, is subject to impeachment. On this question my associates differ, but I reach my conclusion independently of it.

Mr. Justice BICKLEY has reached the conclusion that it was not essential to the lawful removal of the relators that they have the benefit of notice and an opportunity to be heard. I am driven to the same view. I confess, however, that I am somewhat shocked to discover the summary power of the Governor to remove a high official of state by merely asserting his incompetency, his neglect of duty, or his malfeasance in office. Such a charge must needs reflect seriously upon the official against whom it is made. Common fairness would seem to require some method

JANUARY TERM, 1927     301

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

of bringing the specific nature of the accusation to his attention, and of inquiring into its truth. Either as a concession to this principle of fairness, or in doubt as to the power, charges were formulated and served, in the cases at bar, notices given, and hearings had. In view of our conclusion, consideration of the charges, the notice or the hearing is unnecessary and would be inappropriate.

Doubtless it is essential to good government that there be provision for the expeditious removal of incompetent or faithless public servants. It does not seem essential that such power should be so unchecked as we find it to be. However confident we may be that the people of this state will never elect to the high office of Governor one who would prostitute this power to political ends, or misuse it from other unworthy motives, the fact remains that the conclusion we reach opens the door to that abuse. Considerations both of fairness to the individual and of the best interests of the state would forecast a different rule than that we now state. With those considerations, however, the courts are concerned only as they may be assumed to have been in the minds of the Constitution makers, and as aids in interpreting what they said.

There has been much discussion as to whether title to a public office is a property right, and as to whether the power of removal is in its nature judicial, quasi judicial, or administrative. We need not concern ourselves with those questions. As a sovereign state, we had the right to settle them by our Constitution. The courts have only to ascertain how they were determined. It cannot be doubted that we might have given our officials property rights in their offices. We might have made removal from office a purely judicial, a quasi judicial, or a purely administrative, function. We did in fact provide that all officers appointed by the Governor should be removed by him for incompetency, neglect of duty, or malfeasance in office. One accepting such an office, of

course, does so in the knowledge that he obtains no indefeasible title.

So it seems that this is purely a question of correct interpretation. What did the Constitution makers mean? They might have expressly required notice and hearing. They might have expressly dispensed with the necessity. They did neither. In the absence of all precedent, it might have been argued, that if notice and hearing were deemed necessary or desirable, they would have been expressly required. To this the answer would have been that notice of an accusation and hearing before condemnation are principles of the common law, so long established, so essential to satisfy our innate sense of justice, and so much a part of our free institutions, that the observance of those principles is to be assumed; and, therefore, that the Constitution makers assumed that what they wrote into that document would be interpreted in the light of those principles. Such is the doctrine of Dullman v. Wilson, reviewed by Brother BICKLEY, and such the basic principle of those decisions making up what text-writers, unanimously, I believe, call the weight of authority.

That the weight of authority is as stated I am not in doubt. That it is supported by sound reason and salutary policy I agree. The Governor's power of removal was not a new thing in our Constitution. It had often been granted before, and had often been construed. In the absence of local precedent, we would say that it was intended that the power should include what such grants had generally been held to include. So, if, by the decided weight of authority, such grants were deemed limited by the general principles of notice and hearing, we would say that so to limit this grant would be in accord with the presumptive intention of the Constitution makers.

If we could stop hree, I should have grave doubts of the correctness of the rule laid down. But weight of authority is not to be our guide, unless it also guided the Constitution makers. Another consideration is

JANUARY TERM, 1927     303

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

controlling. Conklin v. Cunningham, 7 N. M. 445, 38 P. 170, was decided by the territorial Supreme Court in 1894—its force unimpaired by later pronouncement. Whatever was therein decided was the law of this jurisdiction when the convention framed, and the people adopted, the Constitution. That case arose out of the removal, by the Governor, of an elected sheriff, and the majority of the court emphatically declared that, without notice of any kind, the Governor might determine that the sheriff had failed in his statutory duty to pay over moneys, and had incurred the prescribed penalty of removal from office. That declaration, counsel say, was dictum. I am not prepared to say that it was. If it was dictum, it is certain that it states a position strongly and ably combatted, and states it deliberately and emphatically. That question, however, may rest until we are called upon to consider the case as precedent. Here our interest is in its bearing on the interpretation of our constitutional provision. It was not only an important and well-known case in this jurisdiction, but, as pointed out by Brother BICKLEY, it was a case much referred to. It represented the extreme of the minority doctrine. Those great principles, engrafted upon our jurisprudence in the course of the Anglo-Saxon struggle for liberty, ably expounded by Judge Freeman, who dissented, were given no weight in interpretation as against the supposed interest of the state in the immediate removal of officials charged with wrongdoing.

In the face of Conklin v. Cunningham, I am unable to satisfy myself that the Constitution makers intended their grant of the power of removal to be interpreted in the light of the weight of authority. They must have recognized that, having omitted any requirement for notice or hearing, such could be required only by construction. They could not have expected such construction in this jurisdiction without an overruling of the decision or the emphatic dictum of Conklin v. Cunningham. So we must conclude that they acquiesced in the rule there declared. Other-

304 SUPREME COURT OF NEW MEXICO

State ex rel. Ulrick v. Sanchez, 32 N. M. 265

wise common prudence would have dictated a different provision.

On this ground, I concurred in affirming the judgment, and in the conclusion that the Constitution requires no notice and no opportunity to be heard as a prerequisite to the Governor's power to remove.