## In re Canal Certificates.

19   63
23  309
——————
19   63|
29  352|.

1. EXECUTIVE QUESTIONS—HOW PROPOUNDED.
When the opinion of the court is requested concerning the constitutionality of a bill, or act of the legislature, the consideration of the court must be directed to the specific provisions of the constitution upon which a construction is desired.

2. CONSTITUTIONAL LAW.
The statute relating to State Canal No. 1, providing that the expenses of construction are to be met in part by certificates of indebtedness, payable only out of funds received for carriage of water, or in payment of lands, and providing against any indebtedness being incurred against the state, is not in conflict with the constitutional provisions fixing a limitation upon state indebtedness.

3. STATUTORY CONSTRUCTION.
The carriage of water for the payment of which these certificates are to be receivable is confined to water carried through this canal.

4. CONSTITUTIONAL LAW.
Funds derived from the sale of lands granted to the state are to be held in trust for the use and benefit of the respective objects for which such grants were made.

5. INTERNAL IMPROVEMENTS.

Canals and reservoirs within the state are internal improvements within the meaning of the act of congress, but the internal improvement fund can be made available in the construction thereof only by an express appropriation.

6. CONSTITUTIONAL LAW.

The act relating to the state canal, in so far as it provides for the payment of lands purchased from the state by certificates of indebtedness issued for the construction of the canal, is unconstitutional and void.

7. SAME—STATE BOARD OF LAND COMMISSIONERS.

The constitution having vested in the state board of land commissioners the control and disposition of the public lands of the state under such regulations as may be prescribed by law, the legislature is without power to give to a body of its own creation authority to exercise such powers conjointly with such board.

8. SAME—STATUTE.

An entire statute does not necessarily fail although some of its provisions be unconstitutional.

## Original Proceeding.

THE opinion of the court was rendered in response to interrogatories submitted by Lieutenant Governor Nichols, as acting governor. The questions relate to the constitutionality of an act of the last general assembly entitled, "An act creating a board of control for the completion and construction of State Canal No. 1," etc.

The inception of the legislation with reference to State Canal No. 1 dates back to an act to be found in the Session Laws of 1889, page 285. This act provides that for the purpose of reclaiming by irrigation state and other lands, and for the purpose of furnishing work for the convicts confined in the state penitentiary, the board of commissioners of the state penitentiary is authorized to locate, acquire and construct in the name and for the use of the state of Colorado, ditches, canals, reservoirs and feeders, for irrigating and domestic purposes, and for that purpose may use the labor of persons confined or that may be confined as convicts in the state penitentiary at Canon City. Section two provides that the state engineer, under the direction of the board, shall

locate such ditch or canal of sufficient capacity to cover fifty thousand acres of good arable land between Canon City and Pueblo. This act made an appropriation from the general revenue of $10,000 for the purpose of locating, and paying for powder, fuse, tools, teams and materials used in the construction of said ditches, etc., and it authorized the board to receive subscriptions and advancements from persons owning land along the line of said ditch, for the purpose of aiding in its construction.

Some progress seems to have been made under this act of 1889, and in the year 1891 the legislature made a further appropriation of $50,000 for the purpose of continuing the construction of the canal. This act provided that,—

" The said sum shall be used for the purchase of materials, tools and explosives, and the employment of extra overseers, and guards required in the construction of said canal, and for the more definite and economical location of the line of the same, and for no other purpose." Acts of 1891, p. 335.

Further legislation was had upon the subject at the last session. By an act approved April 8, 1893, the sum of $40,000 was appropriated out of the general fund, for the purpose of continuing the construction of said canal, and by an act approved nine days thereafter, to wit, on April 17, 1893, a state board of control was created for the purpose of completing the construction of the canal and reservoirs connected therewith, etc. This act requires the state engineer to prepare plans and specifications for the construction and completion of said canal and reservoirs connected therewith. In this act it is provided that public advertisement for bids shall be made.

The board of control is authorized to enter into contracts for the completion of said canal and reservoirs, the contracts to be prepared by the attorney general. This act provides that payment for the material and labor furnished and performed in and about the construction and completion of the canal shall be made by means of certificates of indebtedness to be issued by the auditor of state. These certificates are

made to bear five per cent interest, and to be issued in lieu of immediate money compensation for materials and labor furnished. It is provided that such certificates of indebtedness shall be countersigned by the treasurer and approved by the governor, and that the same when so issued "may be accepted by the state in payment for the carriage of water or in payment for lands, and the same shall not in any event become a claim against the state, except as to said fund so to be received."

The act further provides, "The state board of land commissioners in order to facilitate the construction of said canal and reservoirs may, in conjunction with the board of control, advertise and offer for sale at not less than minimum price, every alternate quarter section of the state and school lands lying under the said canal."

It is also provided that the certificates when issued may be received in lieu of money for the lawful and reasonable charges for the carriage of water by said canal, or for perpetual water rights thereunder. In accordance with this latter act the board of control advertised for bids for the construction of said State Canal No. 1, but has not yet let the contract for the same. The estimated additional cost of such canal is about one million dollars.

Mr. Eugene Engley, attorney general, and Mr. H. Riddell, discussed the questions presented.

Chief Justice Hayt delivered the opinion of the court.

The questions submitted for our consideration are so general in character as to leave the court in doubt as to the particular provision or provisions of the constitution in the light of which Acting-Governor Nichols wishes an investigation to be conducted. While this department will be found ready and willing at all times to co-operate with and furnish to the executive such assistance as it may be able, to facilitate the discharge of the public business, yet the court again takes

the liberty of calling attention to the necessity of directing consideration to the specific provisions of the constitution upon which a construction is desired, when the inquiry concerns the constitutionality of a bill, or an act of the legislature. *In re Irrigation*, 9 Colo. 620 ; *In re House Bill No.* 165, 15 Colo. 593 ; *In re Loan of School Fund*, 18 Colo. 195.

We have been aided in the present instance by brief arguments from the attorney general and H. Riddell, Esq., of the Denver bar. We shall limit our reply to the constitutional provisions called to our attention in such arguments. The expenses of construction of the canal in question are to be met in part by certificates of indebtedness. Both principal and interest of these certificates are only to be paid out of funds received for the carriage of water, or in payment for lands. The act expressly provides against any indebtedness being incurred on the part of the state, and therefore is not in conflict with the constitutional provisions heretofore considered by this court fixing a limitation upon state indebtedness. See, *In re Appropriations*, 13 Colo. 316.

By the terms of the act the certificates authorized may, when issued, be "accepted by the state in payment for the carriage of water or in payment for lands." As the state has not undertaken the construction or management of any ditch other than the one mentioned in the act, the carriage of water for which the certificates are to be receivable must necessarily be confined to water carried by this ditch, at least for the present. The same limitation does not, however, apply to the payment for lands. No restriction as to the location of such lands is to be found in the act. Only a small portion of the large bodies of land owned by the state are situate in proximity to the route of the proposed ditch. This fact was well known to the legislature, and in the absence of any express limitation we conclude that it was the intention to make the certificates receivable in payment for lands purchased from the state, without regard to the location of such lands.

Is the legislature empowered to authorize the acceptance of such certificates in payment for lands of the state ? Out-

side of a few small tracts of land used for specific purposes, the only lands owned by the state were received as donations from the general government for specific purposes, such as schools, public buildings, etc. See, secs. 7, 8, 9 and 10, Enabling Act. The framers of our constitution with conscientious regard for the terms of the gift, inserted the following provision in that instrument:

" The general assembly shall, at the earliest practicable period, provide by law that the several grants of land made by congress to the state shall be judiciously located and carefully preserved and held in trust subject to disposal, for the use and benefit of the respective objects for which said grants of land were made." Sec. 10, Art. IX, Constitution. No question with reference to the disposal of the internal improvement fund is involved in any of the interrogatories propounded, or by the terms of this act. Such fund, while properly applicable to the construction of a system of canals and reservoirs within the state, at the discretion of the legislature, can only be made available by an express appropriation. *Int. Imp. Fund*, 12 Colo. 285; *In re Int. Imp.*, 18 Colo. 317.

No argument is required to show that the payment for lands purchased from the state by certificates issued for the construction of this ditch, as provided by the act before us, would necessarily result in diverting these lands and the proceeds thereof from the use and benefit of the respective objects for which the grants were made. We therefore agree with the attorney general and with Mr. Riddell, that the act under consideration is unconstitutional and void, in so far as it authorizes the state to accept the certificates issued in payment for state lands.

A further provision of the act under consideration reads as follows:

" * * * The state board of land commissioners, in order to facilitate the construction of said canal and reservoirs, may in conjunction with the board of control, advertise and offer for sale at not less than minimum price, every alternate

quarter section of the state and school lands lying under the said canal."

Inasmuch as the foregoing directly embraces the school lands in its provisions, attention is called to the following section of the state constitution in addition to the one previously cited.

" The public school fund of the state shall forever remain inviolate and intact; the interest thereon only shall be expended in the maintenance of the schools of the state, and shall be distributed amongst the several counties and school districts of the state, in such manner as may be prescribed by law. No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated except as herein provided. The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur." Sec. 3, art. IX, State Constitution.

This section was recently considered by the court in answering a question submitted by the state senate. As the views of the court were quite fully expressed at that time, we refer to the opinion then rendered without further comment. *In re Loan of School Fund, supra.*

But this is not the only constitutional objection to this portion of the act. By its terms the board of control is authorized to act in conjunction with the state board of land commissioners in the sale of certain of the public lands of the state, while the constitution in express terms lodges in the state board of land commissioners the " control and disposition of the public lands of the state under such regulations as may be prescribed by law." Sec. 9, art. IX.

By the act under consideration the legislature is attempting to give to a body of its own creation authority to exercise, conjointly with the state board of land commissioners, powers vested absolutely in the latter by the fundamental law of the state. This provision of the constitution was under consideration by this court quite recently in answering

questions propounded by the executive relating to the leasing of state lands. It was then decided that, " the provision ' under such regulations as may be prescribed by law,' means such reasonable rules as may be prescribed from time to time by the legislative department of the government." *In re Leasing of State Lands*, 18 Colo. 359. And, although the court was unanimously of the opinion that the limitation of the term of leases of state land, as provided by the act of 1887, should be upheld as a reasonable regulation, it was said:

" It is not to be inferred from this that all legislation upon the subject would be binding upon the state board. Should the legislature, under guise of regulations, attempt to take away all power of disposition of the state lands from the state board, or should laws be enacted for the manifest purpose of favoring other than the highest bidder, such acts would be manifestly in violation of the constitution and void."

If the legislature may require the state board of land commissioners to act in conjunction with the board of control of State Canal No. 1, in disposing of the lands under that canal, it may likewise create other boards to act in like manner in other instances, and thereby entirely destroy the independence of the board created by the constitution. The provision is in no sense such a regulation as that contemplated by the constitution, and cannot be upheld.

Although parts of the act are unquestionably in conflict with the constitution, the entire statute does not necessarily fail for this reason. The act is to expedite the completion of a canal, the construction of which had theretofore received the sanction of three successive legislatures, including the one passing the measure under review. A legislative intent to complete the work inaugurated could not well be more manifest. This intent in no measure rests upon the objectionable provisions. The act provides for the issuance of certificates in lieu of cash, and although the certificates cannot be accepted in payment for the public lands sold by the state, they may be accepted in lieu of money for charges for the carriage of water in said canal, or for perpetual water

rights thereunder, as provided by sec. 14 of the act. *Tripp et al. v. Overocker et al.*, 7 Colo. 72.

As at present advised we are aware of no constitutional objection to the issuance of certificates limited as aforesaid.