## No. 11,247.

### ROBERTS *v.* THE PEOPLE, EX REL. HICKS.

Decided May 4, 1925.

Action in quo warranto to try title to the office of civil service commissioner. Judgment for relator.

*Reversed.*

1. OFFICERS—*Civil Service Commissioner—Removal.* The Governor has no authority to remove a civil service commissioner, such officers being subject to removal only by impeachment under section 2, article 13 of the Constitution.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Mr. DONALD C. MCCREERY, Mr. JOHN R. WOLFF, Mr. HUBERT D. WALDO, JR., for plaintiff in error.

Mr. W. W. GRANT, JR., Mr. RILEY R. CLOUD, Mr. FRED S. CALDWELL, for defendant in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THIS is an action in quo warranto brought by relator, Hicks, against plaintiff in error, Roberts, as respondent, to try title to the office of civil service commissioner. Relator had judgment and respondent brings error.

The civil service commission consists of three members, each holding for six years. They are appointed by the governor alone, their terms overlapping so that one term expires every two years. The commission was established by section 13 article XII of the state Constitution, initiated by petition and adopted November 5, 1918. No specific provision is made there, or elsewhere, for the removal of

the members. Respondent was a duly appointed, qualified and acting commissioner and his term would not expire until December 30, 1926. The governor charged him with incompetency, neglect of duty and malfeasance in office, and on December 30, 1924, after an alleged hearing at which respondent neither appeared nor defended, found him guilty and ordered his removal; and on the following day appointed relator to fill the unexpired term.

It should be noted that no question of the wisdom of the amendment, or the truth of the charges, is before us. The authority for the removal and the legality of the method are our sole concern here.

Respondent says: (1) That under the Constitution a civil service commissioner is removable only by impeachment; (2) that if not, the power to remove such officer has never been delegated to the governor; (3) that if so delegated respondent's purported removal was irregular and illegal. Believing as we do that respondent is right in his first contention his second and third need not be noticed.

It is conceded that a civil service commissioner is an appointive state officer; that there is no statutory provision for his removal; that if subject to impeachment he is not otherwise removable; that the governor had no power to remove him unless such power is expressly conferred by the Constitution; and that if so conferred it is by section 6 of article IV which reads: "The governor shall nominate, and by and with the consent of the senate, appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for, and may remove any *such officer* for incompetency, neglect of duty or malfeasance in office. * * *."

Relator contends that the words "such officer" refer to an officer appointed by the governor; and that the appointment of a civil service commissioner is not "otherwise" provided for but is "likewise" provided for. Respondent contends that the words "such officer" refer to an officer appointed by the governor *with the consent of the senate;*

and that the appointment of a civil service commissioner is "otherwise provided for" by said section 13 of article XII, i. e., "by the governor alone." He therefore says that the method of removal of a civil service commissioner is governed by section 2 of Article XIII of the Constitution which reads: "The governor and other state and judicial officers, except county judges and justices of the peace, shall be liable to impeachment for high crimes or misdemeanors, or malfeasance in office, * * *."

Numerous decisions of courts of other jurisdictions, and certain well known rules of construction, such as *ejusdem generis* and *noscitur a sociis*, are invoked in support of relator's position. Valuable as these always are in cases of grave doubt, the question before us seems too clear to require their aid (with the possible exception of one of said rules hereinafter referred to). Counsel for relator discover such a wide distinction between officers appointed by the governor with the consent of the senate and those appointed by the governor alone as to create a shocking absurdity in permitting the governor to remove those of the first class and denying him a like authority as to those of the second, but they observe no such distinction in construing section 6 of article IV by applying "such officer" to both classes though the first only is mentioned. We are unable to agree with them. It seems to us perfectly clear that "such officer" in said section 6, refers only to officers appointed by the governor with the consent of the senate. It is the method of appointment, not the place of its provision, which governs. No other conclusion can be reached save by striking the word "such" and reading it "may remove any officer."

It is next urged that this construction results in the absurdity of making a civil service commissioner irremovable. But if, as we think, such officer is subject to impeachment under section 2, article XIII, the objection is fully answered. This conclusion counsel would escape by invoking the rule of *ejusdem generis* and so reading section 2 of article XIII "all other *elective* state and judicial

officers." We think the aid of that rule unnecessary, and the resulting construction strained and unwarranted. The section, read as it is written, is plain and unambiguous and speaks for itself.

If these conclusions were not correct, and a grave doubt existed as to the proper interpretation of said sections as applicable to the office of civil service commissioner, one of the rules urged by relator clears the atmosphere and settles the dispute, i. e., the rule requiring a reasonable construction as opposed to one strained or absurd. Said section 13 of article XII not only provides for the appointment of these commissioners by the governor *alone,* one every two years, for six year terms, with no provision for removal by the governor (a provision which we find in the statute creating the commission which this constitutional commission displaced), but further provides that if adequate appropriation be not made by the legislature to carry out the provisions of the act the salaries and expenses of the commission shall be paid as are those of executive officers of the state, but further adds that the section "shall be self-executing." Thus is made manifest the determination of the people to remove these commissioners as far as possible from legislative or executive control or influence, and make the commission as nearly independent as the safety of government would warrant. The necessity therefor not only appears from an examination of the section itself, but had been demonstrated by the state's experience with former legislative commissions under which the operation of the system, thus vainly sought to be established, had been hampered, controlled and defeated by the action, or failure of action, of other departments. Notwithstanding all this, and in face of the fact that the employment, compensation and discharge of almost the entire force of state civil service employees rests with this commission, powers and duties largely taken from the governor upon its establishment, we are now told that the chief executive may remove these commissioners from office on his own accusation, at his own hearing, and for causes of whose

existence he shall be the sole judge. The inevitable result would be a commission powerless to do more than register the executive will. We cannot believe, and decline to hold, that the fundamental law of the state was amended by a section initiated by the people themselves, around which all these safeguards were thrown, only to result at last in a futile gesture.

The judgment is reversed and the cause remanded with directions to dismiss the action.

MR. JUSTICE CAMPBELL not participating.