## No. 16,842.

HARRAH *v.* PEOPLE EX REL. ATTORNEY GENERAL.
(243 P. [2d] 1035)

Decided April 21, 1952

Mr. JAMES S. HENDERSON, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. FRANK A. WACHOB, Assistant, for the people.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will hereinafter refer to plaintiff in error as Harrah; to defendant in error as the People; and to the State Board of Land Commissioners as the Land Board.

The People, as plaintiff, filed a "Complaint in Forcible Entry and Detainer" against Harrah in which it was alleged that the Land Board is vested with control and disposition of public lands of Colorado; that the particular land, which we identify as tract three (3) located within the City and County of Denver, is public land under the control of the Land Board; that in an action in the district court of Denver, by judgment duly entered, Harrah was awarded a lease upon said tract three (3) which ended on January 7, 1950; that under said judgment Harrah "was to surrender possession of said premises and remove from the said lands his improvements within a period of sixty (60) days from the termination of said lease"; that Harrah has not vacated the land, has not removed his improvements therefrom, and remains in possession "without lease and without the authority or permission" of the Land Board, and "has been a trespasser upon said described lands"; and that

"the State of Colorado has been damaged by said trespass in the sum of twenty-five dollars ($25.00) per day for each and every day from said January 7, 1950, to the date of suit." The prayer set out in the complaint was for judgment for possession of tract three (3), for "statutory damages" in the sum of $11,350.00, and for costs.

Counsel for Harrah moved to dismiss the action on the ground of failure of plaintiff to state a claim, which motion was denied. In his answer he admitted that tract three (3) was state land; and alleged that the judgment of the Denver district court, to which reference is made in the complaint, was void in so far as it related to tract three (3); that for many years prior to January 7, 1949, he had occupied tract three (3) under lease duly executed by the Land Board, and when the last of said leases expired, "he continued to occupy said premises with the consent and by permission" of said board; that the Land Board had never at any time served notice upon him terminating his tenancy on tract 3 or demanding possession thereof as required by law; that he is not a trespasser upon said property and does not forcibly detain the same, but is in lawful possession thereof.

Trial was to the court without a jury. Findings of fact and legal conclusions based thereon were in favor of the People. The trial court entered judgment in favor of the People for possession of the land and for $17,725.00, being the amount accruing at the rate of $25.00 per day from January 7, 1949, to the date of judgment. Thereafter, on determination of a motion for new trial, the trial court added to the money judgment an additional $325.00 to cover the time which elapsed after entry of the judgment and prior to disposition of the motion for new trial.

Harrah, seeking reversal of the judgment, brings the case here by writ of error. His attorney, in the specification of points, sets forth twelve grounds upon which he relies for reversal.

It is undisputed that prior to 1942 Harrah's occupancy

of tract 3, together with other lands in the same area, was authorized under written lease. It also is undisputed that Harrah had expended substantial sums of money in improvements upon tract 3. In 1942 the amount of land leased by the Land Board to Harrah was substantially reduced. A new lease was executed which did not actually include tract 3. Harrah and the Land Board believed, however, that all land upon which improvements had been erected was included in this lease. Harold F. Collins, president of the Land Board, testified in this connection as follows: "Q. Isn't it a fact, Mr. Collins, that it was the intent of the State Board of Land Commissioners at the time that lease was executed to give Mr. Harrah a lease on the acreage on which his improvements were situated? A. That is what we thought we were doing, yes, sir. Q. When did you first find out that the lease you have given to Mr. Harrah did not cover all of the land upon which his improvements were located? A. Oh, I think it was somewhere around the fall of 1945, some two or three years afterwards."

No action was taken to cause the removal of Harrah from tract 3 when this discovery was made. When the 1942 lease, covering land other than tract 3, expired, a controversy arose and the Attorney General brought an action in the district court to secure the removal of Harrah from the land covered by that lease.

During the trial of that case, the attorneys for the contesting parties entered into a stipulation. By this stipulation they disposed of the case and specifically settled the claims of the parties in and to the real estate which was the subject of the action. In addition thereto it was provided that the Land Board should execute and deliver to Harrah a lease on tract 3 for a term of one year and that Harrah was to surrender possession of said tract 3 and remove the improvements therefrom within sixty days from the expiration of said term. Tract 3 was not otherwise made a part of the subject matter of the action. The district court entered judgment pursuant to the terms of

that stipulation. It is the judgment set forth in the complaint and reliance is placed thereon by the Attorney General as being the final determination of Harrah's right to possession of tract 3. It is clear that neither of the parties carried out the judgment of the court in so far as it related to tract 3. No lease was executed by the Land Board, and Harrah remained in possession with its full knowledge and consent. This situation continued until April 6, 1951, when the complaint in the instant case was filed.

We need consider but two of the points urged by the attorney for Harrah. They are: (1) "That the trial court erred in holding that Section 65, Chapter 134, 1935 C.S.A. authorized the entry of an order for possession of real property." and (2) "That the trial court erred in denying the contention of plaintiff in error that Section 65, Chapter 134, 1935 C.S.A. defines a criminal offense (misdemeanor), and that, therefore, the section is not applicable to a civil proceeding."

It is conceded by the Attorney General that the action is based upon the statute above cited. In effect it is argued by him that in so far as the Land Board is concerned the provisions of the forcible entry and detainer statute are not applicable, and that actions to recover possession of state lands are controlled by section 65, chapter 134, '35 C.S.A. This statute, omitting words wholly inapplicable, provides:

"All * * * persons using or occupying any state or school lands without lease, and all * * * persons who shall use or occupy state or school lands for more than thirty days after the cancellation or expiration of a lease, * * * shall be regarded as trespassers, and upon conviction thereof, shall be fined in the sum of not less than twenty-five dollars ($25.00) and not more than one hundred dollars ($100.00) and each day shall be considered a separate offense, * * * and in addition to the foregoing penalty the state shall be allowed to collect as rental for the use of such lands a sum equal to the appraised value

thereof for rental purposes, as fixed by the state board of land commissioners, and which value shall not be less than five cents per acre per annum. All suits under the provisions of this article shall be instituted under the direction of the attorney general, in the name of the people of the state of Colorado."

Questions to Be Determined.

First: *Does the statute above quoted authorize the entry of a judgment for possession of state land, and in effect exempt the State Board of Land Commissioners from compliance with those provisions of the law governing the rights of all other landlords to dispossess a tenant from the occupancy of real property?*

This question is answered in the negative. It is not contended that the People have made a case under the provisions of chapter 70, '35 C.S.A., the forcible entry and detainer act. The position of the Attorney General in this connection is set forth in a section of his brief under the heading, "The Procedure for Evicting Trespassers from State Lands is Provided for by Sections 73 and 65 of Chapter 134, 1935 Colorado Statutes Annotated."

Section 73 provides only for the venue of such actions, and is not in any way questioned in this case. We already have quoted all pertinent parts of section 65. Under this statute a heavy penalty may be imposed for violation of its provisions. The statute being penal must be strictly construed. *Fanstiel v. Wright,* 122 Colo. 451, 222 P. (2d) 1001; *Steck v. Prentice,* 43 Colo. 17, 95 Pac. 552. We fail to find any language in said section 65 authorizing or permitting the entry of a judgment for possession of land in an action based upon said statute. In actions for forcible entry and detainer, where plaintiff is successful, the judgment enters in favor of the landlord or one who claims through him. By constitutional provision, (section 10, article 9), the Land Board is the legal landlord of state lands, and it executes all leases of

state lands in the capacity of landlord. The Land Board is not the plaintiff in this action. By express provision of the statute in question, section 65, supra, actions thereunder shall be instituted "in the name of the people of the state of Colorado." This clearly indicates that no judgment for possession of lands is contemplated in proceedings based on this statute. Since a strict construction of the statute is required, we cannot by implication read into it words that are not present, nor supply remedies not clearly provided by language employed in the act.

Second: *Where a statute defines a trespass upon state lands and provides that "upon conviction thereof" such trespasser "shall be fined in the sum of not less than twenty-five dollars ($25.00) and not more than one hundred dollars ($100.00) and each day shall be considered a separate offense," does the court, in a civil action, have authority to consider said penalty as the measure of civil damages and enter judgment for the sum of $25.00 per day for each day the defined trespass is found to have continued?*

This question is answered in the negative. The statute does nothing more than to define a criminal offense and fix the amount of fine to be imposed upon conviction thereof. A trespass may give rise to a civil liability, or it may be the basis of a criminal action if so provided by statute. If the liability is of a civil nature the injured party may recover his damages in a civil action. If the trespass is so defined as to subject the transgressor to criminal prosecution and punishment upon conviction, then the penalty imposed for the offense cannot be made the measure of damage to be collected by the People in a civil action. The statute in question provides that cases arising thereunder shall be instituted "under the direction of the attorney general, in the name of the people of the state of Colorado." This is consistent with the conclusion that the offense defined is a criminal offense. It is inconsistent with the theory that through a civil action

the "fine" may be recovered as "statutory damages." The fact that the statute provides that the attorney general shall direct the institution of actions arising thereunder does not warrant the conclusion that the penalty imposed can be collected in a civil action. General authority is imposed upon the attorney general "to appear and prosecute in all cases wherein the state is a party or interested when required so to do by the governor or general assembly." *People v. Gibson,* 53 Colo. 231, 125 Pac. 531. There is nothing in this rule that is out of harmony with the law pertaining to the duties of district attorneys. We said in *People v. Gibson, supra:* "So, when the governor or the general assembly requires the attorney general to prosecute a criminal case in which the state is a party, he becomes to all intents and purposes the district attorney, and may in his own name and official capacity exercise all the powers of such officer, for he is then, and in that case, the public prosecutor. Being authorized and empowered to appear and prosecute, he can do each and everything essential to prosecute in accordance with the law of the land."

On behalf of the People it is argued that the statute in question is analogous to those statutes authorizing the imposition of a penalty upon directors of corporations for failure to perform certain duties required by law, and to those authorizing imprisonment of a defendant where body execution is warranted in a civil case. It is contended that such statutes are penal, but are enforced only in civil actions. Cases arising under such statutes are clearly distinguishable from the instant action. The difference is that the penalty imposed in the case of corporate directors is enforced "at the suit or suits of any creditor or creditors" (section 80, chapter 41, '35 C.S.A.), and the people of the State of Colorado are not involved or affected. Thus the failure of a corporate director to file an annual report is in no sense criminal and a violation of that statute does not affect the sovereign. *Ahearn,*

*Admx., v. Goble,* 90 Colo. 173, 7 P. (2d) 409. An entirely different situation would be presented if such statute provided that a director who failed to file an annual report, upon conviction, should be fined a sum not to exceed $1,000.00, and that each day such default continued would be a separate offense to be prosecuted in the name of the people of the State of Colorado. Such a statute would unquestionably define a criminal act. In the same manner the statute authorizing execution against the body of a defendant in a civil action, and the assessment of exemplary damages, provides a penalty to be enforced at the behest of a particular individual in a manner affecting him alone. The state is not involved and the people of the State of Colorado, as such, have no interest in coercing the defendant to satisfy a judgment entered in a civil case by authorizing his imprisonment.

It follows that the trial court erred in the foregoing particulars and accordingly the judgment is reversed and the cause remanded with directions to dismiss the action.