No. 26815

**Ross Evans and Gilbert Evans, a/k/a Gilbert Evans and Son v. Raymond M. Simpson, Tommy Neal, Robert D. McPhee, State Board of Land Commissioners and Empire Energy Corporation**

(547 P.2d 931)

Decided March 29, 1976.

Madden and Strate, P.C., William J. Madden for plaintiffs-appellants.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, David W. Robbins, First Assistant Natural Resources Section, for defendants-appellees.

Shaw & Coghill, Richard Shaw, Stan L. Spangler, for defendant-appellee Empire Energy Corporation.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellants (Evans) appeal from an adverse decision of the district court dismissing their complaint against appellees for injunctive relief, a declaratory judgment, and for damages resulting from the alleged wrongful cancellation of a lease of state land from the Board of Land Commissioners (Board). We affirm the judgment.

On March 17, 1964, Evans, as lessee, and appellee Board, as lessor, entered into a ten-year lease of certain state land to be used by Evans for agricultural and grazing purposes. Eight years later, on March 31, 1972, the Board, as lessor, and appellee Empire Energy Corporation (Empire), as lessee, entered into a coal mining lease for a period of ten years or as long thereafter as coal was produced in paying quantities. The thirteen hundred acres leased to Empire were also part of the acreage leased to Evans under the 1964 lease. The Empire lease provided in part that Empire had:

"* * * the right and privilege of exploring and prospecting for, and mining for and taking coal from the lands hereinafter described * * * together with the right to use as much of the surface thereof as may be reasonably required in the exercise of the right to mine coal, *including strip mining.* * * *" (Emphasis added.)

The lease also provided that:

"* * * Lessee has the right to utilize as much of the surface of the lands as is necessary for mining operations, and shall be liable and agrees to pay for all damages to the surface, livestock, growing crops, water wells, reservoirs, or other improvements caused by Lessee's operations on said lands. * * *"

On March 17, 1974, the Board renewed the Evans lease for another ten-year period, but subject to the following provisions:

"1—b. The right [of the state] to lease all or any portion of said premises for mineral purposes, together with such surface rights as may be necessary for operation under such mineral lease. * * *

"1—d. The right to cancel this lease on all or any part of the leased premises upon ninety (90) days notice to the lessee by mail, whenever the lessor, having received an application to lease all or any portion of said land for any other purpose, elects to lease said premises for such purposes as may be determined by the lessor."

On December 20, 1974, the Board notified Evans that, effective October 20, 1975, pursuant to the cancellation provision of the lease, the lease would be cancelled as to that portion of the land which overlapped

that leased to Empire, for the reason that Empire had notified the Board that it would begin strip mining operations in the area. It was not disputed that these operations would significantly affect the surface of the land.

The following January, Evans commenced an action against the Board, its individual members, and Empire, alleging that the Board had acted illegally and in excess of its constitutional and statutory authority when it cancelled the lease. Appellees filed various motions, including a motion to dismiss for failure to state a claim and to dismiss for lack of jurisdiction of the subject matter. The motion to dismiss for failure to state a claim was treated as a motion for summary judgment, based on the allegations of the complaint, together with the various leases, the notice of cancellation, and affidavits, there being no dispute as to the facts giving rise to the controversy. C.R.C.P 12(b). After hearing, the court dismissed the action and thereupon this appeal was commenced.

## I.

A threshold question is presented by appellees, who contend that this case was erroneously filed in this court and should be transferred to the court of appeals. They argue that this case does not fall within any of the exceptions to the jurisdiction of the court of appeals, contained in section 13-4-102, C.R.S. 1973. We have elected, however, under section 13-4-109(3), C.R.S. 1973, to treat this matter as certified from the court of appeals. We therefore proceed directly to the merits.

## II.

Evans contends that the court erred as a matter of law in dismissing the action. We do not agree.

It was Evans' position in the trial court, and is here, that under section 24-4-106(8), C.R.S. 1973, the court had jurisdiction to enjoin the Board's cancellation of the lease and Empire's entry onto the land for coal mining purposes. This section, in pertinent part, provides:

"Upon a showing of irreparable injury, any court of competent jurisdiction may enjoin at any time the conduct of any agency proceeding in which the proceeding itself or the action proposed to be taken therein is clearly beyond the constitutional or statutory jurisdiction or authority of the agency. * * *"

Evans argues that the Board's action in cancelling the lease was clearly beyond the constitutional or statutory jurisdiction or authority of the Board. The court concluded to the contrary, holding that there was no showing that the action of the Board was clearly beyond its constitutional or statutory authority, nor was there any showing of irreparable injury which could not be compensated by administrative or legal action. *Cf. Moore v. Dist Ct.*, 184 Colo. 63, 518 P.2d 948.

As to Evans' incidental claim for damages, it was conceded that if the Board had the authority to cancel Evans' lease prior to its termination date and the authority to permit Empire to enter onto the property to mine

coal, the question of the amount of such incidental damages would first have to be submitted to the Board for determination under the statute providing for determination of conflicting claims, section 36-1-131, C.R.S. 1973; and, therefore, since there was no final agency action which could be reviewed under section 24-4-106, C.R.S. 1973, the court had no jurisdiction to consider such claim for damages. *Moschetti v. Liquor Lic. Auth.*, 176 Colo. 281, 490 P.2d 299; *Denver v. Duffy*, 168 Colo. 91, 450 P.2d 339, *appeal dismissed*, 396 U.S. 2, 90 S.Ct. 23, 24 L.Ed.2d 1.

The key issue is whether the Board had the constitutional and statutory authority to reserve in its lease to Evans the specific right to cancel the lease on all or any part of the leased premises. Evans argues that, under section 36-1-118(5), C.R.S. 1973, the Board has power to cancel leases if and only if it finds that the lessee has violated a provision of his lease or has made false statements in his lease application. Since Evans' lease clearly was not cancelled for either of these reasons, the action of the Board was, it is argued, in excess of its delegated powers. We cannot agree with this interpretation of the statute.

█ The constitutional grant of powers to the Board is broad. *Colo. Const.* Art. IX, Secs. 9 and 10. Under section 9 of the constitution, the Board has the "direction, control and disposition of the public lands of the state under such regulations as are and may be prescribed by law.* * *"
Section 10 provides, in part:
"It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or other disposition of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law; and in such manner as will secure the maximum possible amount therefor. * * *"
It is thus clear that the legislature has the constitutional authority to regulate the Board's activities; and it is equally clear that the Board's activities may not contradict or exceed specific statutory limits. *Walpole v. State Board*, 62 Colo. 554, 163 P. 848; *In Re State Land*, 18 Colo. 359, 32 P. 986. But we find no statutory language which can be read to prohibit the Board from entering into leases akin to the one at issue. Section 36-1-118(1)(a) provides that the public lands of the state may be leased by the Board "in such manner and to such persons as will produce an optimum long-term revenue." The Board has been characterized by this court as a managing landlord. *Harrah v. People*, 125 Colo. 420, 243 P.2d 1035. In our view, the constitution mandates that, unless limited by express statutory regulations, the Board shall enter into whatever leases it deems to be most beneficial to the state. It may therefore utilize any lease terms not prohibited by law, such as that provision for cancellation involved in the lease under consideration, to obtain maximum revenues.

█ In view of our determination that the Board does have the authority to provide in its leases a specific provision for cancellation, such as

is contained in the Evans lease of March 17, 1974, the argument of Evans fails. The trial court was correct in its determination that it did not have jurisdiction under section 24-4-106(8), C.R.S. 1973, to enjoin the Board under these circumstances. Although our holding here precludes Evans, in this action, from pursuing its claim for incidental damages allegedly caused by Empire's mining operations, Evans has its administrative remedy to pursue its damage claim before the Board under section 36-1-131, C.R.S. 1973.

In view of our disposition above, we need not consider the other contentions asserted by Evans for reversal.

The judgment is affirmed.

MR. JUSTICE KELLEY does not participate.