Senator Tilman Bishop, Chairman Committee on Water and Land Resource Colorado State Senate Senate Chambers Colorado State Capital Building Denver, Colorado 80203
Dear Senator Bishop:
This letter is in response to your letter of September 30, 1985, in which you request an attorney general's opinion regarding the constitutional and statutory relationship between the office of the executive director of the Department of Natural Resources (executive director) and the Board of Land Commissioners (Land Board) concerning the formulation and implementation of administrative and policy matters affecting public lands.
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents the following questions:
a. Is the type 1 delegation of authority over the State Board of Land Commissioners to the Department of Natural Resources, (sections 24-1-105, and 124(3)(d), C.R.S. (1982 and 1985 Supp.), more limited than other type 1 transfers because of the constitutional creation of the board?See Colo. Const. art. IX, secs. 9 and 10.
My conclusion is yes.
.a. Does the Department of Natural Resources have administrative control over the hiring and firing of State Land Board personnel, the determination of the number and types of positions required, and the organization of personnel?
 My conclusion is no with respect to the hiring, i.e., the filling of vacancies, and firing of Land Board personnel and the types of positions required. My conclusion is yes with respect to the determination of the number of positions required. With respect to the organization of personnel, my conclusion is yes as to personnel performing functions not vested in the Land Board by statute or the constitution, but no as to personnel performing substantive functions vested in the Land Board by statute or the constitution.
2.b. Does the Department of Natural Resources have administrative control over the determination of office space and furniture requirements?
My conclusion is yes.
2.c. Does the Department of Natural Resources have administrative control over the determination of budgetary requirements?
My conclusion is yes.
2.d. Does the Department of Natural Resources have administrative control over the daily monitoring of personnel, including board members, to oversee numbers of hours worked and matters worked on?
My conclusion is no.
.a. Do the board members accrue sick leave or annual leave?
My conclusion is no.
3.b. If board members do not accrue sick leave or annual leave, can they be required to maintain records of any sick leave or annual leave taken?
My conclusion is yes, if required by statute.
b. Does the Department of Natural Resources have authority to oversee or control policy decisions of the Land Board regarding the management of state trust land?
My conclusion is no.
c. Is the Land Board required to submit its decisions on policy to the department for approval?
My conclusion is no.
d. Is the Land Board required to explain its policy decisions to the department?
My conclusion is no.
e. Does the Department of Natural Resources have the authority to impose sanctions against the Land Board, such as withholding salary, for failing to follow the advice or requests of the department regarding policy decisions?
My conclusion is no.
f. Does the Department of Natural Resources have the authority to impose sanctions against the Land Board for failing to comply with its administrative directives?
My conclusion is no; that authority rests with the Governor.
10.a. Does the requirement that the State Board of Land Commissioners "provide for the location, protection, sale or other disposition" of public lands "in such a manner as will secure the maximum amount therefore" (Colo. Const. art. IX, §10) prevent the Land Board from considering public interest factors in its management and leasing of the public lands?
My conclusion is no.
10.b. May the Land Board open grazing leases to hunting and fishing so long as it does not result in lowering rents received from the land?
 My conclusion, as to current leases, is that it would depend upon the terms of the individual lease. As to future leases, my conclusion is yes.
10.c. If the Land Board is developing a subdivision, may it exceed local planning and zoning requirements in setting aside open space, parks and public use area?
 My conclusion is yes, provided that it would be consistent with the constitutional mandate that it "will secure the maximum possible amount therefor."
10.d. May the board adopt a multiple-use management policy like that of the federal public land management agencies?
My conclusion is yes.
ANALYSIS
The State Board of Land Commissioners was created by art. IX, § 9 of the original state constitution, which was adopted by the territorial constitutional convention on March 14, 1876, and ratified by the territorial electorate at an election held on July 1, 1876. The General Statutes of the State of Colorado 1883, pp. 32-83.
The Department of Natural Resources and the office of the executive director were created in 1968 as part of the "Administrative Organization Act of 1968." 1968 Colo. Sess. Laws 88. In the "Administrative Organization Act of 1968," the general assembly, pursuant to the mandate of art. IV, § 22 of the state constitution, allocated all executive and administrative offices and agencies in the executive branch of state government to 17 principal departments. 1968 Colo. Sess. Laws 75-76.
As part of the administrative organization of the executive branch, the Land Board was allocated to the newly created Department of Natural Resources as a division thereof and transferred to it by a type 1 transfer. 1968 Colo. Sess. Laws 89. The allocation was made in the following words:
 (3)(a) The department of natural resources shall consist of the following divisions:
. . . .
 (e) The state board of land commissioners, created by section 9 of article IX of the state constitution, and its powers, duties, and functions, are transferred by a type 1 transfer to the department of natural resources as a division thereof, subject to the state constitution.
Id. (Emphasis partly added.)
The general assembly, by the addition of the words "subject to the state constitution" clearly indicated that the allocation of the Land Board and the transfer of its powers, duties, and functions to the department were subject to the higher mandate of the state constitution. See for comparison all other type1 transfers within the Department of Natural Resources. None contains this explicit qualification. Thus, as stated above in my conclusion to question No. 1, the type 1 transfer of the Land Board to the department is more limited than othertype 1 transfers. The scope of this limitation, of course, is dictated by the provisions of secs. 9 and 10 of art. IX of the state constitution.
Art. XII, § 13(7) of the state constitution provides that the heads of divisions shall be the appointing authorities for all positions in the state personnel system within their respective divisions. To the same effect, see section 24-1-108, C.R.S. (1982). Section 24-1-108, however, states that all appointments shall be made in accordance with section 24-2-102, C.R.S. (1982). Subsection (1) of section 24-2-102 provides that all officers, assistants and employees as may be necessary in each principal department shall be appointed by the head of such department. Subsection (1) of section 24-2-102 is itself qualified by the phrase: "Except as otherwise provided by law. . . ." The apparent facial inconsistency between section 24-1-108 and subsection 24-2-102(1) is resolved by me in favor of the interpretation that the head of a division is the appointing authority for all positions within the division which are in the state personnel system. This resolution is based upon two premises. First, the state constitution, to the extent it is not in conflict with the federal constitution, is the paramount law of the state. Art. XII, § 13(7) of the state constitution provides in clear and unambiguous terms that "heads of such divisions shall be the appointing authorities for all positions in the personnel system within their respective divisions." Second, the applicable part of subsection 24-2-102(1) is qualified by the phrase: "Except as otherwise provided by law. . . ." Art. XII, § 13(7) so provides otherwise.
As discussed above, the Land Board was transferred to the Department of Natural Resources as a division thereof. Section24-1-124(3)(d). It is my opinion, in answer to question No. 2.a. that the "hiring and firing," i.e., the appointment or termination, of Land Board personnel within the state personnel system rests with the Land Board as head of the division and thus as the appointing authority under the rules and regulations of the Colorado state personnel system.
This conclusion is consistent also with the provisions of subsection 36-1-102(1), C.R.S. (1982), which provides that the Land Board "is authorized to employ, pursuant to section 13 of article XII of the state constitution, an office force." It is also consistent with section 36-1-111, C.R.S. (1982) to the effect that the Land Board "shall appoint, pursuant to section 13 of article XII of the state constitution, such appraisers of state lands as are necessary. The appraisers shall be under the direction of the state board of land commissioners." Seealso section 36-1-138, C.R.S. (1982) (which authorizes the Land Board to establish a mineral section and appoint a superintendent of same).
Since it is the responsibility of the Land Board, as the appointing authority, to appoint or terminate classified personnel within the division, it is my opinion, in response to that portion of question No. 2.d. concerning employees of the division, that the daily monitoring of such personnel to oversee the number of hours worked and matters worked on rests with the Land Board.
Subsection 24-1-105(1), C.R.S. (1982), as it originally appeared in the "Administrative Organization Act of 1968" read as follows:
 Under this act, a type 1 transfer means the transferring intact of an existing department, institution, or other agency, or part thereof, to a principal department established by this act. When any department, institution, or other agency, or part thereof, is transferred to a principal department under a type 1 transfer, that department, institution, or other agency, or part thereof, shall be administered under the direction and supervision of that principal department, but shall exercise its prescribed statutory powers, duties and functions, including rule-making, regulation, licensing, and registration, and the promulgation of rules, rates, regulations, and standards, and the rendering of findings, orders, and adjudications independently of the head of the principal department. Under a type 1 transfer, all budgeting, purchasing, and related management functions of any transferred department, institution, or other agency, or part thereof, shall be performed under the direction and supervision of the head of the principal department.
1968 Colo. Sess. Laws 74. In 1973, the last sentence quoted above was amended by the insertion of the phrase: "any powers, duties, and functions not specifically vested by statute in the agency being transferred, including but not limited to." 1973 Colo. Sess. Laws 187. The last sentence was amended again in 1974 by the addition of word "planning" so that the last sentence now reads:
 Under a type 1 transfer, any powers, duties, and functions not specifically vested by statute in the agency being transferred, including, but not limited to, all budgeting, purchasing, planning, and related management functions of any transferred department, institution, or other agency, or part thereof, shall be performed under the direction and supervision of the head of the principal department.
1974 Colo. Sess. Laws 202.
Thus, according to subsection 24-1-105(1) as it exists today, atype 1 agency exercises its prescribed statutory powers, duties and functions independently of the head of the principal department; however, as to powers, duties and functions not specifically vested by statute in the type1 agency, such powers, duties and functions are performed under the direction and supervision of the head of the principal department. With respect to budgeting, purchasing, planning and related management functions, such are to be exercised by a type 1 agency under the direction and supervision of the head of the principal department. Powers, duties and functions not specifically vested in a type1 agency, and budgeting, purchasing, planning and related management functions, may be reallocated by the head of a principal department, with the approval of the Governor, to other divisions, sections and units within the principal department. Section 24-1-107, C.R.S. (1982). However, powers, duties and functions vested by statute in a type 1 agency may not be removed by the head of the principal department from thattype 1 agency. Id. Thus, not only are prescribed statutory "powers, duties, and functions, including rule-making, regulation, licensing, and registration, the promulgation of rules, rates, regulations, and standards, and the rendering of findings, orders, and adjudications," to be performed by a type 1 agency independently of the head of the principal department, but they may not be removed by the head from such agency and allocated to another division, section or unit within the principal department.
Specifically with respect to the Land Board and the department, the Land Board was transferred to the department in 1968 pursuant to a type 1 transfer. 1968 Colo. Sess. Laws 89. As discussed above, the type 1 transfer was made subject to the state constitution. See also section24-33-104(1)(c), C.R.S. (1982).
In defining the relationship between the Land Board and the department, it is necessary also to consider secs. 9 and 10 of art. IX of the state constitution. In § 9 of art. IX, "the direction, control and disposition of the public lands of the state" is vested in the board "under such regulations as are and may be prescribed by law. . . ." In § 10 of art. IX, it is made the duty of the Land Board:
 to provide for the location, protection, sale or other disposition of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law; and in such manner as will secure the maximum possible amount therefor.
Completing the questions you asked in question No. 2.a., it is my opinion that the department head has administrative control over the Land Board's determination of the number of positions required in the division; this under the department head's authority to oversee budgeting and planning for the department as a whole. With respect to the remaining portion of question No. 2.a., i.e., the organization of personnel in the division (Land board), the department head's administrative control turns upon whether the personnel in question are performing functions of the Land Board that are specifically vested or not specifically vested in the board by statute or the constitution. If the personnel are performing functions specifically vested in the Land Board by statute or the constitution, then the department head does not have administrative control over the organization of the affected personnel. That control rests with the Land Board. See analysis above as to subsection 24-1-105(1) and section 24-1-107. See also my opinion, dated June 15, 1984, to Mr. David H. Getches, executive director of the Department of Natural Resources.
If, on the other hand, the functions being performed by the affected personnel are not specifically vested in the Land Board by statute or the constitution, then the department head has administrative control over the organization of the affected personnel.
In question No. 3.a. you have inquired whether members of the Land Board accrue sick leave or annual leave, and in question No. 3.b. you have asked if such members do not accrue sick or annual leave, whether they can be required to maintain records of such leave that is taken. Annual leave is a form of compensation.Bruce v. City of St. Louis, 217 S.W.2d 744, 748
(Mo.App. 1949). The same may be said of sick leave. A state officer is entitled to compensation, emoluments, fees, costs, expenses, mileage, etc., if such is provided for by statute. McGovernv. City and County of Denver, 54 Colo. 411, 131 P. 273
(1913); Leckenby v. Post Printing and PublishingCo., 65 Colo. 443, 176 P. 490 (1918). The position of state land board commissioner is that of a state officer, as opposed to a state employee. Cf. Corfman v.McDevitt, 111 Colo. 437, 142 P.2d 383 (1943). I have found no statute which provides that members of the Land Board accrue either sick leave or annual leave. The general assembly, however, could require land board commissioners to keep records of time not spent performing their duties as commissioners.
In question No. 4, you have inquired: "Does the Department of Natural Resources have any authority to oversee or control policy decisions of the State Land Board regarding the management of state trust land?" From my analysis of the "Administrative Organization Act of 1968" and secs. 9 and 10 of art. IX of the state constitution, my conclusion is that the head of the department does not have any such authority.
It is specifically provided in subsection 24-1-105(1) of the "administrative Organization Act of 1968" relating to type1 transferred agencies that prescribed statutory powers, duties and functions shall be exercised independently
of the head of the principal department. The management of state trust land, the constitution aside, is vested in the Land Board by statute. See, e.g, sections 36-1-105,36-1-107, 36-1-108, 36-1-109, 36-1-113, 36-1-114, 36-1-115,36-1-118, 36-1-120, 36-1-122, 36-1-123, 36-1-124, 36-1-125, 36-1-127,36-1-129, 36-1-136, 36-1-137, 36-1-138, 36-1-141 and 36-1-144, C.R.S. (1982 1984 Supp.).
This conclusion is not inconsistent with the interpretation given to secs. 9 and 10 of art. IX by the Colorado Supreme Court. InSunray Mid-Continent Oil Company v. State,149 Colo. 159, 368 P.2d 563 (1962), the court held that the Land Board could not be required to share management control with the State Board of Agriculture over the lands at the Fort Lewis School which had been granted to the state by the federal government. As stated by the court: "The Land Commissionersalone have the constitutionally imposed duty to provide for the `. . . sale or other disposition' of such lands, `under such regulations as may be prescribed by law.'"149 Colo. at 164-165. (Emphasis added.) To the same effect, see in ReCanal Certificates, 19 Colo. 63, 34 P. 274 (1893). In short, the Land Board may not be required to share management control over state trust lands with the head of the department, let alone subordinate management control.
In question No. 5 you inquire: "Is the State Land Board required to submit its decisions on policy to the Natural Resources Department for approval?" My conclusion is that the Land Board is not for the reasons stated above. As a type 1 agency, it exercises its prescribed statutory powers, duties and functions independently of the head of the department. As such, it is not required to submit its decisions on policy affecting public lands to the head of the department for approval. Furthermore, by the constitution, the Land Board alone, under regulations prescribed by the general assembly (statutory law), determines policy as it affects public lands. SunrayMid-Continent Oil Company v. State, supra;In re Canal Certificates, supra.
You inquire in questions No. 6: "Is the State Land Board required to explain its policy decisions to the Natural Resources Department"? My conclusion is that the Land Board is not required to explain policy decisions to the head of the department. If the Land Board is not required to submit its policy decisions to the head of the department for approval because such decisions are to be performed independently of the head of the department, then it follows that it is not required to explain such decisions to the head of the department. However, I assume that the Land Board does communicate with the department head to inform him as to the board's management of state public lands, if for no other reason than department budgeting, planning and purchasing as they relate to the board.
In question No. 7, you inquire: "Does the Natural Resources Department have the authority to impose sanctions against the State Land Board, such as withholding salary, for failing to follow the advice or requests of the Natural Resources Department regarding policy decision?" My conclusion is that the department head may not impose sanctions. It follows that if the department head does not have authority to oversee or control policy decisions of the Land Board, and the Land Board is not required to submit its policy decision to the department head for approval, or to explain them, then the department head has no authority to impose sanctions against the board for failing to follow the department head's advice or requests regarding policy decisions.
In question No. 8, you inquire: "Does the Natural Resources Department have the authority to impose sanctions against the Land Board for failing to comply with its administrative directives?" My conclusion is that the department head does not have such authority. However, sanctions in the form of removal may be imposed against Land Board members by the Governor if failure to comply with the administrative directives of the department head would constitute incompetency, neglect of duty or malfeasance in office.
Art. IX, § 9 of the state constitution provides in part:
 The state board of land commissioners shall be composed of three (3) persons to be appointed by the Governor, with the consent of the senate . . . and the successor or successors of the first members of the board shall each be appointed for terms of six (6) years.
Art. IV, § 6(1) of the state constitution provides, in part:
 The Governor shall nominate and, by and with the consent of the senate, appoint all officers whose offices are established by this constitution . . . and may remove any such officers for incompetency, neglect of duty, or malfeasance in office.
Since the offices of the Land Board Commissioners are created by art. IX, § 9 of the state constitution, Peoplev. Field, 66 Colo. 367, 372, 181 P. 526 (1919); In reQuestions by the Governor, 55 Colo. 105, 106, 133 P. 140
(1913); they are constitutional offices. People v.Field, supra. The commissioners are appointed by the Governor, with the consent of the senate. Art. IX, § 9. As such, the authority to impose sanctions against members of the Land Board rests with the Governor, not the head of the Department of Natural Resources. Cf. Roberts v.People ex rel. Hicks, 77 Colo. 281, 235 P. 1069 (1925).
In question No. 10 you asked several subquestions.
First you inquire: "Does the requirement that the State Board of Land Commissioners `provide for the location, protection, sale or other disposition' of the public lands `in such manner as will secure the maximum amount therefor' (Colorado Const. art. IX, § 10) prevent the Board from considering public interest factors in its management and leasing of the public lands.'" You give as an example, would it be possible for the Land Board to give preference to public entities if such public entities bid as much as a private bidder.
Sections 9 and 10 of art. IX impose two general restraints upon the discretion of the Land Board in its "direction, control and disposition of the public lands of the state." First, the Land Board's discretion is to be exercised subject to "such regulations as are or may be provided by law," and second, in "such manner as will secure the maximum possible amount therefor." In In re Leasing of State Lands, 18 Colo. 359,364, 32 P. 986 (1893), the supreme court wrote:
 Therefore, in leasing state lands, the board must first look to the statutes to ascertain the regulations therein prescribed, and then, in exercising their constitutional powers, they must so act as in the judgment of the board will secure the maximum amount, under the prescribed regulations.
Immediately prior in its opinion the supreme court defined the word "regulations" as used in secs. 9 and 10 of art. IX to mean such "reasonable rules as may be prescribed from time to time, by the legislative department of the government."Id. In Evans v. Simpson, 190 Colo. 426, 430,547 P.2d 931 (1976), the supreme court wrote of secs. 9 and 10 of art. IX:
 In our view, the constitution mandates that, unless limited by express statutory regulations, the Board shall enter into whatever leases it deems to be most beneficial to the state. It may therefore utilize any lease terms not prohibited by law . . . to obtain maximum revenues.
I have reviewed the Colorado Revised Statutes as it applies to the Land Board and find no specific statutory prohibition against the Land Board taking public interest factors into consideration in the management and leasing of public lands, if such does not result in the state securing less than the maximum amount.
You also inquire in question No. 10: "Could the Board open grazing leases to hunting and fishing, so long as it did not result in lowering rents received from the land?" With respect to existing grazing leases, it would depend upon the terms of the lease. With respect to future leases for grazing, the Land Board has discretion to reserve the right to open such leased public lands for hunting and fishing. Cf. Evans v.Simpson, supra.
You next inquire in question No. 10: "If the Board is developing a subdivision, may it exceed local planning and zoning requirements in setting aside open space, parks and public use areas?" Once again I find no specific statutory prohibition. Thus, if in the judgment of the Land Board, exceeding local planning and zoning requirements for open space, parks and public use areas would not result in the state receiving less than the maximum amount from the development of the subdivision, this would be within the board's authority. Id.
Finally, in question No. 10 you inquire: "May the Board adopt a multiple-use management policy like that of the federal public land management agencies?" Once again, I find no specific statutory prohibition against such a multiple-use management policy.
SUMMARY
The Land Board was transferred to the Department of Natural Resources under the "administrative Organization Act of 1968," by a type 1 transfer, which transfer was made specifically to article IX, sections 9 and 10 of the state constitution. Under a type 1 transfer, the Land Board exercises its statutory and constitutional powers, duties and functions independently of the head of the department, and such statutory and constitutional powers, duties and functions may not be transferred by the department head to any other division, section or unit within the department. With respect to powers, duties and functions not vested in the Land Board by statute or the constitution, such powers, duties and functions, and budgeting, purchasing, planning and related management functions they are to be performed by the Land Board under the direction of the department head, and may be transferred by him, with the approval of the Governor, to other divisions, sections or units within the department.
Pursuant to article XII, section 13(7) of the state constitution, the Land Board is the appointing authority for all positions within the division that are in the state personnel system. Thus, the appointment, discipline and termination of such personnel rests with the Land Board. However, the determination of the number of positions within the Land Board, rests with the department head.
Land Board commissioners are appointed by the Governor, with the consent of the senate, pursuant to article IX, section 9 of the state constitution. As such, authority rests with the Governor, not the department head, under article IV, section 6(1) of the state constitution to impose sanctions against board members for incompetency, neglect of duty or malfeasances in office.
Article IX, sections 9 and 10 impose two restraints on the Land Board's management of state lands. These restraints are that management is subject to regulations adopted by the general assembly and that the sale or other disposition of state lands must secure the maximum possible amount. Unless specifically so restricted, the Land Board may sell, dispose of, or manage state lands as the board deems most beneficial to the state. Since it has not been so restricted, the board may open future grazing leases to hunting and fishing, to exceed local zoning for open space unless this will not return to the state the maximum amount therefore, and adopt multiple use of state lands.
Very truly yours,
 DUANE WOODARD Attorney General
STATE AGENCIES STATE GOVERNMENT PUBLIC OFFICERS
Section 24-1-105(1), C.R.S. (1982) Section 24-1-107, C.R.S. (1982) Section 24-1-108, C.R.S. (1982) Section 24-1-124(3)(d), C.R.S. (1982) Section 24-2-102(1), C.R.S. (1982) Section 24-33-104(1)(c), C.R.S. (1982) Section 36-1-102(1), C.R.S. (1982) Section 36-1-111, C.R.S. (1982) Section 36-1-138, C.R.S. (1982)
Colo. Const. art. IV, § 6(1) Colo. Const. art. IV, § 22
Colo. Const. art. IX, § 9
Colo. Const. art. IX, § 10
Colo. Const. art. XII, § 13(7)
LEGISLATIVE BRANCH Senate
The Land Board was transferred to the Department of Natural Resources under the "administrative Organization Act of 1968," by a type 1 transfer, which transfer was made specifically to article IX, sections 9 and 10 of the state constitution. Under a type 1 transfer, the Land Board exercises its statutory and constitutional powers, duties and functions independently of the head of the department, and such statutory and constitutional powers, duties and functions may not be transferred by the department head to any other division, section or unit within the department. With respect to powers, duties and functions not vested in the Land Board by statute or the constitution, such powers, duties and functions, and budgeting, purchasing, planning and related management functions they are to be performed by the Land Board under the direction of the department head, and may be transferred by him, with the approval of the Governor, to other divisions, sections or units within the department.
Pursuant to article XII, section 13(7) of the state constitution, the Land Board is the appointing authority for all positions within the division that are in the state personnel system. Thus, the appointment, discipline and termination of such personnel rests with the Land Board. However, the determination of the number of positions within the Land Board, rests with the department head.
Land Board commissioners are appointed by the Governor, with the consent of the senate, pursuant to article IX, section 9 of the state constitution. As such, authority rests with the Governor, not the department head, under article IV, section 6(1) of the state constitution to impose sanctions against board members for incompetency, neglect of duty or malfeasances in office.
Article IX, sections 9 and 10 impose two restraints on the Land Board's management of state lands. These restraints are that management is subject to regulations adopted by the general assembly and that the sale or other disposition of state lands must secure the maximum possible amount. Unless specifically so restricted, the Land Board may sell, dispose of, or manage state lands as the board deems most beneficial to the state. Since it has not been so restricted, the board may open future grazing leases to hunting and fishing, to exceed local zoning for open space unless this will not return to the state the maximum amount therefore, and adopt multiple use of state lands.